403 So.2d 933 (1981)
Guy Ennis SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 56005.
Supreme Court of Florida.
July 16, 1981.
Rehearing Denied October 15, 1981.
*934 Robert T. Adams, Jr., Marianna, for appellant.
Jim Smith, Atty. Gen., and Paul H. Zacks, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Guy Ennis Smith was convicted by a jury in Orange County, Florida, of murder in the first degree of Gracie Mae Crawford. The jury recommended that the judge impose a sentence of life imprisonment, but the trial judge rejected that recommendation and imposed the death sentence. Smith appeals both his conviction and sentence. We have jurisdiction.[1]
Smith was a member, and was described as an "enforcer," of the Outlaws, a motorcycle gang. On the night of Ms. Crawford's death, he, other members of the Outlaws, and Ms. Crawford were at a nightclub where they all did a great deal of drinking. Ms. Crawford had arrived at the bar with another escort, but left with several members of the Outlaws to go to their clubhouse. At the clubhouse a heated discussion erupted between gang members and Ms. Crawford concerning her friendship with blacks. Following a statement by her that she "liked their money," some of the group decided that the gang should "train her." She was thereafter beaten by members of the gang.
There was testimony that Smith participated in this beating and that he more than once forced the victim's face into a sink to wash off the blood. When the beating stopped, two members of the gang, William White and Richard DiMarino, placed her in a borrowed car, ostensibly to take her home.
Smith's conviction is based primarily on what transpired next. DiMarino testified that Smith came up to the car and said, "I don't want any witnesses. If you take care of business, don't run a sloppy act." DiMarino said that this statement by Smith meant the girl was to be murdered so that she could not be a witness. White and DiMarino sat the intoxicated Crawford between them in the front seat and drove off. She was found the next morning stabbed to death.[2]
The only person who testified to the Smith "order" was DiMarino, who previously had been tried and convicted of third-degree murder for his part in this episode. At trial it was pointed out that, in consideration for DiMarino's testimony, the state had dismissed two additional felony charges against him and had made arrangements for him to serve his prison sentence where there would be no members of the Outlaws gang around. Furthermore, the prosecutor pointed out that DiMarino had been convicted of "between five and ten felonies."
Despite DiMarino's discrediting characteristics, the jury apparently believed him and found that Smith did order Crawford's execution. Although it is with little comfort that a conviction can stand on the testimony of one as disreputable as DiMarino, DiMarino's credibility was the peculiar responsibility of the jury. See, e.g., Chaudoin v. State, 362 So.2d 398 (Fla. 2d DCA 1978) (weight and credibility solely within province of jury; appellate court's only function to determine sufficiency as a matter of law); Abbott v. State, 334 So.2d 642 *935 (Fla. 3d DCA 1976), cert. denied, 345 So.2d 420 (Fla.), cert. denied, 431 U.S. 968, 97 S.Ct. 2926, 53 L.Ed.2d 1064 (1977) (conflicts in evidence and questions about witness's credibility will not justify reversal when evidence is legally sufficient to support conviction). We cannot substitute our judgment for that of the jury simply because the testimony came from the mouth of a disreputable felon who had been granted favors by the state and who admitted he lied when it would "suit [his] fancy." There is evidence, if believed, sufficient for the jury to conclude that Smith directed the execution of Crawford to eliminate her as a witness to her battery at the hands of the Outlaws. This makes him responsible for her murder. See § 777.011, Fla. Stat. (1977).
We find no infirmities in the conviction, and we affirm.[3]
We now consider the sentence. The trial judge did not articulate any reason for rejecting the jury's recommendation of a life sentence. The record does not show that he had any more information than the jury did; the trial judge did not demonstrate how reasonable men would not differ on the matter of sentencing. Whatever his rationale, we are unable to discern a basis which would be sufficient to reject the life-sentence recommendation.
It is the final responsibility of the trial judge to pass sentence, but his sentencing to death is restricted in the light of a jury's recommendation of life.
In reviewing the propriety of a death sentence, this Court has previously held that it must weigh heavily the advisory opinion of life imprisonment by the sentencing jury. The facts justifying the death sentence must be clear and convincing in order to overrule the jury's recommendation. It is our duty to examine the record in this cause and determine whether there are clear and convincing facts that warrant the imposition of the death penalty over a jury's recommendation of life imprisonment.
Neary v. State, 384 So.2d 881, 885 (Fla. 1980) (citations omitted).
The conviction is affirmed, but the sentence of death is vacated, and the cause is remanded to the trial judge with instructions to impose a sentence of life imprisonment without eligibility for parole for twenty-five years.
It is so ordered.
SUNDBERG, C.J., and OVERTON, ENGLAND and McDONALD, JJ., concur.
ALDERMAN, J., concurs in result only.
ADKINS, J., concurs as to conviction and dissents as to sentence.
BOYD, J., dissents with an opinion in which ADKINS, J., concurs.
BOYD, Justice, concurring in part and dissenting in part.
I concur with the majority opinion in affirming the conviction of first degree murder, but I would also affirm the judgment of the trial court imposing the penalty of death. Based on a weighing of the prescribed statutory aggravating and mitigating circumstances, the trial judge rejected the jury's recommendation as unreasonable. My review of the evidence convinces me that he was legally correct in doing so.
ADKINS, J., concurs.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.
[2] DiMarino confessed to the killing and after trial was sentenced to 15 years in prison. White was convicted of the murder and received a death sentence; his appeal is pending before this Court, Case No. 55,878.
[3] Other issues raised, but without merit, are:

a. Whether the admission of certain photographs requires a new trial.
b. Whether alleged discovery violations by the state require a new trial.
c. Whether prosecutorial misconduct requires a new trial.
d. Whether defendant was denied a fair trial by an overreaching judge.