418 So.2d 1000 (1982)
Donald Albert WALSH, Appellant,
v.
STATE of Florida, Appellee.
No. 59512.
Supreme Court of Florida.
July 29, 1982.
Rehearing Denied September 23, 1982.
*1001 Samuel R. Mandelbaum of Anthony F. Gonzalez, P.A., Tampa, for appellant.
Jim Smith, Atty. Gen., and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Appellant Donald Albert Walsh was convicted by a jury of aggravated assault, trespassing with a firearm, and first-degree murder. The trial judge imposed two consecutive five-year sentences for the former two charges, and, over the jury's recommendation of life, imposed the death sentence for the murder conviction.[1] We affirm all three convictions and the sentences for assault and trespassing, but, in accordance with the jury's recommendation, we remand to the trial court with directions to reduce the death sentence to life imprisonment without the possibility of parole for twenty-five years.
In early December, 1979, appellant, age 25, was visiting his stepmother in the Immokalee area of the northwest Everglades. On the afternoon of December 3, two friends of appellant's younger brother, ages 15 and 13, approached appellant with a .35 caliber rifle and informed him that they had stolen it. The boys gave appellant the rifle in exchange for a chance to drive appellant's automobile to go wild boar hunting.
The three departed for an area where appellant knew wild boar to be. On arrival, appellant spotted a pack of boars inside a double-fenced pasture owned by Immokalee Ranch. Appellant shot one hog, causing it to fall momentarily and then wander off. He was unable to locate the hog, and, after driving to another area, and returning, he spotted the same pack of boars. Appellant shot at another hog and killed it. While the two juveniles began to drag the dead hog back to the vehicle, appellant went searching for the wounded hog.
At about that time, Deputy Sheriffs Amos and Thomas arrived on the scene in an unmarked Bronco in response to a complaint of gunshots from the ranch manager. The officers were clothed so that one would not readily recognize them as sheriff's deputies. *1002 They first apprehended the juveniles and then started after appellant who had disappeared into a large ditch. When the deputies approached, appellant shot Deputy Amos in the head, killing him instantly. Deputy Thomas ran back to his vehicle, crashed it through the fences, and fired at appellant until he surrendered.
At trial, one of the juveniles testified that when crossing into the pasture, he asked appellant "What if the cops come?" Appellant responded by lifting the rifle in his hand, saying, "Don't worry about it." The other juvenile testified that, while Deputy Thomas was running back to his vehicle, appellant "sat down on his knees" and aimed at Deputy Thomas, but did not shoot. The officer who examined the gun after appellant's apprehension testified that the gun appeared to be jammed.
Appellant testified in his own behalf that when he saw a plainclothed man, later identified as Deputy Amos, coming toward him with gun drawn, he feared for his life and fired an unaimed shot in the man's direction in self-defense. Deputy Thomas testified that the decedent had "just cleared leather" with his gun before he was shot in the head. One of the juveniles testified that Deputy Amos had not drawn his gun.
Before trial, appellant underwent a polygraph examination, the results of which favored appellant's claim of self-defense. The state timely objected to the introduction of this evidence by filing a motion before trial to exclude the polygraph results. The trial court granted the state's motion and instructed the defense accordingly.
The trial court scheduled appellant's first trial on April 9, 1980. At the beginning of the defense's case, defense counsel had the written polygraph report marked as a court exhibit. While appellant was on the witness stand, defense counsel asked appellant if his testimony was true. Appellant responded, "Yes, I took a lie detector test and passed it." The state immediately moved for a mistrial. The trial court at first denied the motion and gave the jury a precautionary instruction, but the next day granted a mistrial. The court rescheduled trial for June 5, 1980. It resulted in appellant's convictions for the offenses charged.
At the sentencing phase of the second trial, the jury unanimously recommended life imprisonment. The trial court rejected the recommendation and sentenced appellant to death. The court found three aggravating factors: appellant was previously convicted of a violent felony (the present aggravated assault and trespassing convictions), appellant committed the murder to avoid lawful arrest, and the murder was cold, calculated, and premeditated. The court considered two mitigating factors: appellant's lack of a criminal record and testimony concerning appellant's good character.

Trial Phase
Appellant first urges that we should set aside his convictions on the grounds that he was subjected to double jeopardy, there being no manifest necessity for mistrial. We reject this contention, finding the trial court justified in granting mistrial because of appellant's improper comments on the witness stand. Appellant and his counsel knew that the trial court had previously ruled the polygraph results inadmissible. Absent consent by both the state and defendant, polygraph evidence is inadmissible in an adversary proceeding in this state. Codie v. State, 313 So.2d 754 (Fla. 1975); Sullivan v. State, 303 So.2d 632 (Fla. 1974), cert. denied, 428 U.S. 911, 96 S.Ct. 3226, 49 L.Ed.2d 1220 (1976); Kaminski v. State, 63 So.2d 339 (Fla. 1952). The same rule applies in the United States Court of Appeals for the Fifth Circuit. See United States v. Masri, 547 F.2d 932, 936 (5th Cir.), cert. denied, 431 U.S. 932, 97 S.Ct. 2640, 53 L.Ed.2d 249 (1977); United States v. Cochran, 499 F.2d 380 (5th Cir.1974), cert. denied, 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 825 (1975).
In granting the present mistrial, the trial court said:
The Court having given the instruction yesterday, having reviewed the cases, thought over the matter during the evening, *1003 being basically violently opposed to starting over on a trial that took this long ... cannot feel that the jury can adequately disregard what they heard and what they heard would not influence their decision; therefore, the court finds that it has no alternative but to grant the request for a mistrial... .
(Emphasis ours.) We agree with the trial judge that this type of testimony would be difficult for the jurors to disregard and that the evidence would likely influence the jury's decision. We agree that there was a sufficient manifest necessity to grant a mistrial and that defendant's assertion of double jeopardy is without merit.
Appellant next contends that the trial court erred in failing to instruct on the minimum and maximum penalties as mandated by Tascano v. State, 393 So.2d 540 (Fla. 1980), and Florida Rule of Criminal Procedure 3.390(a). We reject this contention. More than in any other criminal proceeding, the jury in a capital case knows the minimum and maximum penalties involved. At voir dire, the court or counsel inquires as to each juror's attitude toward the death penalty and each juror's ability to apply the law which may result in a death sentence. Additionally, in a death case, the trial and sentencing phases are bifurcated; each juror participates in the sentencing process and must affirmatively recommend whether life or death is appropriate. Because the jury in a death case clearly knows the maximum and minimum penalties, the reasoning behind the Tascano decision is not present. Welty v. State, 402 So.2d 1159 (Fla. 1981).
Appellant's final contention is that the state failed to prove premeditation. We find more than sufficient evidence in this record to establish premeditation and to sustain the convictions for each offense with which appellant was charged.

Penalty Phase
Appellant cites multiple claims of error in the penalty phase of his trial. We reject as being without merit that due process requires a statement of particulars as to aggravating circumstances, Clark v. State, 379 So.2d 97 (Fla. 1979), cert. denied, 450 U.S. 936, 101 S.Ct. 1402, 67 L.Ed.2d 371 (1981); Menendez v. State, 368 So.2d 1278 (Fla. 1979), that polygraph evidence should be allowed as a mitigating factor in the sentencing phase, see Codie v. State, Sullivan v. State, Kaminski v. State, and that the trial court improperly doubled up aggravating circumstances.
We find, however, that the trial court should have accepted the jury's unanimous recommendation of life imprisonment. This Court has repeatedly held that the trial court and this Court must weigh heavily the sentencing jury's advisory opinion of life imprisonment. Tedder v. State, 322 So.2d 908 (Fla. 1975). We have allowed the trial court to overrule a life recommendation only where the facts justifying death are so clear and convincing that no reasonable person could differ. See Buford v. State, 403 So.2d 943 (Fla. 1981), cert. denied, ___ U.S. ___, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982); White v. State, 403 So.2d 331 (Fla. 1981); Zeigler v. State, 402 So.2d 365 (Fla. 1981), cert. denied, ___ U.S. ___, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982); Johnson v. State, 393 So.2d 1069 (Fla. 1980), cert. denied, 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981); Dobbert v. State, 375 So.2d 1069 (Fla. 1979), cert. denied, 447 U.S. 912, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980); Hoy v. State, 353 So.2d 826 (Fla. 1977), cert. denied, 439 U.S. 920, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978); Barclay v. State, 343 So.2d 1266 (Fla. 1977), cert. denied, 439 U.S. 892, 99 S.Ct. 249, 58 L.Ed.2d 237 (1978); Douglas v. State, 328 So.2d 18 (Fla.), cert. denied, 429 U.S. 871, 97 S.Ct. 185, 50 L.Ed.2d 151 (1976). And we have reversed the death sentence and directed the trial court to impose life imprisonment where there was a reasonable basis for the jury's recommendation. Goodwin v. State, 405 So.2d 170 (Fla. 1981); Odom v. State, 403 So.2d 936 (Fla. 1981), cert. denied, ___ U.S. ___, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982); McKennon v. State, 403 So.2d 389 (Fla. 1981); Smith v. State, 403 So.2d 933 (Fla. 1981); Stokes v. State, 403 So.2d 377 (Fla. 1981); Welty v. State, 402 So.2d 1159 *1004 (Fla. 1981); Barfield v. State, 402 So.2d 377 (Fla. 1981); Phippen v. State, 389 So.2d 991 (Fla. 1980); Williams v. State, 386 So.2d 538 (Fla. 1980); Neary v. State, 384 So.2d 881 (Fla. 1980); Malloy v. State, 382 So.2d 1190 (Fla. 1979); Brown v. State, 367 So.2d 616 (Fla. 1979); Shue v. State, 366 So.2d 387 (Fla. 1978); Buckrem v. State, 355 So.2d 111 (Fla. 1978); McCaskill v. State, 344 So.2d 1276 (Fla. 1977); Burch v. State, 343 So.2d 831 (Fla. 1977); Chambers v. State, 339 So.2d 204 (Fla. 1976); Provence v. State, 337 So.2d 783 (Fla.), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1976); Jones v. State, 332 So.2d 615 (Fla. 1976); Thompson v. State, 328 So.2d 1 (Fla. 1976); Tedder v. State, 322 So.2d 908 (Fla. 1975); Swan v. State, 322 So.2d 485 (Fla. 1975); Slater v. State, 316 So.2d 539 (Fla. 1975). In this cause, we conclude there was a reasonable basis for the jury's unanimous recommendation and the trial court should have followed that recommendation.
For the reasons expressed, we affirm appellant's convictions and sentences for assault and trespassing with a firearm. We reverse the sentence of death and remand the cause to the trial court with directions to enter a sentence of life imprisonment without the possibility of parole for twenty-five years.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON, SUNDBERG and McDONALD, JJ., concur.
ADKINS, J., concurs as to conviction and dissents as to sentence.
NOTES
[1] We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.