458 So.2d 755 (1984)
William EUTZY, Appellant,
v.
STATE of Florida, Appellee.
No. 64212.
Supreme Court of Florida.
September 20, 1984.
Rehearing Denied December 3, 1984.
*756 Michael E. Allen, Public Defender and Steven L. Bolotin, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Lawrence A. Kaden, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This appeal from a conviction of first-degree murder and sentence of death is before the Court pursuant to article V, section 3(b)(1), Florida Constitution. We affirm the conviction and the sentence.
William Eutzy and his sister-in-law, Laura Eutzy, were stopped in the Pensacola airport by a security guard. Appellant identified himself as Raymond Sanders, but Laura Eutzy gave her correct name. The couple was later seen getting into a taxicab driven by the victim, Herman Hughley.
A dispatcher for the cab company for which Hughley drove testified that Hughley reported picking up a fare at the airport with a destination in Pensacola Beach. Forty-five minutes later, Hughley reported that the destination had been changed to Fort Walton; ten or twenty minutes later he notified the dispatcher that they were going to Panama City. Three-and-a-half hours after the last report, Hughley notified the dispatcher of his return. When the dispatcher asked him to repeat his message she got no response. Repeated attempts *757 to reach Hughley were unsuccessful.
Hughley's body was discovered in the front seat of his cab by a driver for the same cab company, Mary Beasley. She had seen Hughley with the Eutzy couple at the airport the evening before. Her curiosity was aroused when she drove past Hughley's cab, apparently deserted, on the edge of the Pensacola Junior College campus. Other witnesses were able to testify it had been there since approximately the time of Hughley's last contact with his dispatcher.
William and Laura Eutzy were picked up while trying to hitchhike out of town the day after Hughley's body was discovered. They had been spotted by Jackie Humel who was at that time on her way to the police department to make a statement in the Hughley case. She had seen Hughley and appellant at the spot where Hughley was later discovered dead at about the time Hughley radioed in his last report.
Laura Eutzy had a pistol, later proven to be the murder weapon, in her purse at the time of her arrest. She testified before the grand jury and at Eutzy's trial that she had ridden in the back seat of the cab, sleeping off and on. Eutzy had sat in the front with Hughley. To the best of her knowledge, Eutzy had had only five dollars when they hired the cab; she had had no money. She did not know how they were going to pay the cab fare. Appellant said he would take care of it. When they returned to Pensacola, Eutzy had the cab driver drop Laura off at a Holiday Inn. He then rode off with Hughley. When appellant returned, Laura asked him if he had taken care of the fare. He answered in the negative and he told Laura he had hit the driver on the head with the gun but had not hurt him. Laura testified that she had not been aware that he had taken the gun until he returned it to her at that time. On the morning they were arrested, Laura read a story about Hughley's murder in the local newspaper and realized for the first time what had happened, according to her testimony.
Eutzy was tried for first-degree murder. The jury found him guilty of first-degree premeditated murder, using a special verdict form. At the guilt phase, evidence was presented that Eutzy had a prior conviction for robbery. Eutzy presented no evidence of mitigating circumstances. The jury recommended a life sentence but the judge declined to follow that recommendation. Finding three aggravating factors  conviction of a prior violent felony, murder committed during a robbery, murder was cold, calculated and premeditated  and no mitigating circumstances, the trial judge sentenced Eutzy to death.
Appellant raises no allegation of error concerning the guilt phase of the trial. We have reviewed the record independently and find no reason to disturb the jury's verdict.
Appellant raises five issues challenging the imposition of the death penalty. Three of these merit little discussion. Appellant argues that the statutory authority granted a trial judge to override a jury's recommendation of life is unconstitutional as applied. This issue was not timely raised before the trial court and thus was not preserved for appeal.
Appellant contends that the jury instructions given in the penalty phase were constitutionally inadequate. Without reaching the merits of the instructions themselves, we note that appellant received a jury recommendation of life imprisonment, the more lenient of the two options before the jury. Appellant is unable to demonstrate any harm arising from the allegedly erroneous instructions.
Appellant disputes the finding that the murder was committed in a cold, calculated and premeditated manner. However, the evidence is clear that Eutzy procured the gun in advance, that the victim was shot once in the head, execution style, and that there was no sign of struggle. It is axiomatic that every aggravating factor must be proved beyond a reasonable doubt. Williams v. State, 386 So.2d 538 (Fla. 1980). This does not, however, proscribe *758 the use of circumstantial evidence to meet this burden of proof, so long as that circumstantial evidence is inconsistent with any reasonable hypothesis which negates the aggravating factor. Compare, McArthur v. State, 351 So.2d 972 (Fla. 1977). The jury convicted Eutzy of first-degree premeditated murder, and Eutzy raises no objection to the sufficiency of the evidence, albeit circumstantial, to support that verdict. Accepting the evidence of premeditation, we can find no reasonable hypothesis inconsistent with the heightened premeditation required for this factor. See, e.g., Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982).
Appellant challenges the finding that the murder occurred during the commission of a robbery. We agree that this finding cannot be supported by the record. The state failed to present any evidence that the victim had anything of value with him before the murder or that no cash or valuables were on the victim's body when he was found. The prosecutor argued to the jury that cab fare was "due and owing" the victim and that a finding of robbery could be based on that circumstance alone. We do not find this to satisfy the elements of the robbery statute. Section 812.13(1), Florida Statutes provides: "`Robbery' means the taking of money or other property which may be the subject of larceny from the person or custody of another by force, violence, assault or putting in fear." The force, violence, assault or putting in fear must be contemporaneous or precedent to the taking. McCloud v. State, 335 So.2d 257 (Fla. 1976); Montsdoca v. State, 84 Fla. 82, 93 So. 157 (1922).
Assuming, for the moment, that no payment was made, there is nothing in the record to show that the cab ride[1] was "taken" by precedent or contemporaneous force, violence, assault or putting in fear. The murder occurred, in the prosecutor's own words, when the payment was "due and owing" to the victim  after the cab ride had been taken.
As important, however, is the utter void in the record that payment was not made or that anyroobbery occurred. As noted above, no evidence was submitted that the victim was in custody of cash or other property before he picked up the Eutzy couple. Neither was evidence presented that no cash or property was found on or near the victim's body. Any inference that taking occurred could only be based on Laura's testimony that, to the best of her knowledge, appellant had only five dollars in his possession during these events. This evidence is counterbalanced by testimony from cab company employees that it was standard practice to demand payment in advance for any trip beyond the city limits. In the absence of any material evidence in the record which would unequivocally support a finding that a robbery occurred, we must disallow this aggravating factor. We note in passing, however, that the evidence in the record was sufficient to support a finding that the murder was committed for pecuniary gain. Because the trial court failed to find this aggravating factor, we must ignore it in our review of the propriety of the jury override.
Finally, appellant argues that the jury override violates the Tedder standard. This Court has consistently held that a jury's recommendation of life is entitled to great weight and should be followed unless the facts justifying a death sentence are so clear and convincing that virtually no reasonable person could differ. Tedder v. State, 322 So.2d 908 (Fla. 1975). As well as contesting two of the aggravating factors, as discussed above, appellant posits three reasons which he claims show the impropriety of the jury override.
First, appellant notes that in the vast majority of all cases in which this Court has affirmed the imposition of the death sentence in spite of a jury recommendation of life, there has been a finding that *759 the murder was especially heinous, atrocious and cruel. While appellant's statistical compilation and case analysis is interesting and informative, we cannot agree that it is binding precedent for the proposition that a jury recommendation of life coupled with the absence of that particular aggravating factor destroys the trial judge's statutory authority to independently weigh the evidence in aggravation and mitigation and to impose sentence. Though always entitled to great weight, the jury's recommendation is only advisory. Under no combination of circumstances can that recommendation usurp the judge's role by limiting his discretion.
Appellant further argues that the jury could have found a mitigating circumstance in Eutzy's age. He was forty-three at the time of his conviction and, if sentenced to life imprisonment, would be sixty-eight before he became eligible for parole. Appellant argues that it was reasonable for the jury to consider in mitigation the probability that the defendant would no longer be a threat to society when he reentered it. In passing, we question the reasonableness of the conclusion that a previously violent sixty-eight-year-old who has spent twenty-five years in prison is, by virtue of age alone, rendered harmless to society. However, the crucial flaw in appellant's argument is that he mistakes the nature of mitigation. Mitigating circumstances must, in some way, ameliorate the enormity of the defendant's guilt. For this reason, age is a mitigating circumstance when it is relevant to the defendant's mental and emotional maturity and his ability to take responsibility for his own acts and to appreciate the consequences flowing from them. See, Barclay v. State, 343 So.2d 1266 (Fla. 1977), cert. denied, 439 U.S. 892, 99 S.Ct. 249, 58 L.Ed.2d 237 (1978). One who has attained an age of responsibility cannot reasonably raise as a shield against the death penalty the fact that, twenty-five years hence, he will no longer be young.
Of more consequence is the contention that the jury may have been swayed by the state's treatment of Laura. Originally charged with first-degree murder as a co-defendant,[2] Laura testified at trial that she was facing, at worst, five years' imprisonment for possession of a concealed weapon. At best, she would serve five years' probation.
This Court has upheld the reasonableness of jury recommendations of life which could have been based, to some degree, on the treatment accorded one equally culpable of the murder. McCampbell v. State, 421 So.2d 1072 (Fla. 1982). In such cases, we have reversed the judge's decision to override the recommendation when the accomplice was a principal in the first degree; Herzog v. State, 439 So.2d 1372 (Fla. 1983); McCampbell v. State; when the accomplice was the actual triggerman; Barfield v. State, 402 So.2d 377 (Fla. 1981); Slater v. State, 316 So.2d 539 (Fla. 1975); when the evidence was equivocal as to whether defendant or the accomplice committed the actual murder; Smith v. State, 403 So.2d 933 (Fla. 1981); Malloy v. State, 382 So.2d 1190 (Fla. 1979); Halliwell v. State, 323 So.2d 557 (Fla. 1975); or when the accomplice was the controlling force instigating the murder; Stokes v. State, 403 So.2d 377 (Fla. 1981); Neary v. State, 384 So.2d 881 (Fla. 1980). In every case, the jury has had before it, in either the guilt or the sentencing phase, direct evidence of the accomplice's equal culpability for the murder itself. That is not the case before us.
Had it disbelieved Laura's testimony entirely, the jury could have inferred from the facts before it that Laura knew the defendant had taken the gun from her purse. This does not suffice to make her a principal in the first degree, equally as culpable of the homicide as the defendant. *760 She was not at the scene of the crime; there was testimony in evidence that she was seen at the Holiday Inn at the approximate time the murder occurred and that she was not at the scene of the crime when Jackie Humel saw Eutzy and the victim there. Nor is there anything in the record which would support a reasonable inference that she was constructively present. There is no evidence which would show that she aided, abetted, counseled, hired or otherwise procured the offense. For a jury recommendation of life to be reasonable, based on lenient treatment accorded an accomplice, the jury must have been presented with evidence tending to prove the accomplice's equal culpability. Otherwise, the state, which often must rely on testimony of a defendant's unsavory companions in presenting evidence of a crime, would bear the burden of rehabilitating those witnesses and defending the legal propriety of treatment the jury might perceive as too lenient. The jury may reasonably compare the treatment of those equally guilty of a crime; it may not compare treatment of those guilty of a different, lesser crime in weighing the propriety of the death penalty. Because the record is devoid of any evidence which would show that Laura was a principal in the first degree in the murder, we must reject the argument that the jury's recommendation of life could reasonably have been based on the disparate treatment of Laura and William.
No evidence of mitigating circumstances was presented for the jury to consider. We have rejected as unreasonable those considerations which may have influenced the jury's recommendation of life. Faced with two validly applied aggravating factors and no valid mitigating circumstances, either statutory or non-statutory, we find no reason to disturb the sentence imposed by the trial court. We find from a comparison of past first-degree murder cases that the sentence is consistent with that imposed for similar homicides. The conviction and sentence are accordingly affirmed.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, ALDERMAN, EHRLICH and SHAW, JJ., concur.
McDONALD, J., concurs in the conviction, but dissents from the sentence.
NOTES
[1] "Property which is subject to larceny" includes "services" according to sections 812.012(3)(c) and 812.014(1)(a), Florida Statutes. A cab ride, however pointless, is a service.
[2] Laura filed a traverse to the indictment, which the state failed to answer. The state dropped the murder charge and filed an information on the concealed weapon charge. As discussed later, the record shows no facts upon which Laura could have been tried for murder, unless William testified against her.