597 So.2d 262 (1992)
William H. KELLEY, Petitioner,
v.
Richard L. DUGGER, etc., Respondent.
No. 77708.
Supreme Court of Florida.
March 12, 1992.
Rehearing Denied May 26, 1992.
Larry Helm Spalding, Capital Collateral Representative, Tallahassee, Billy H. Nolas and Julie D. Naylor, Ocala, and Barry P. Wilson of Zalkind & Sheketoff, Boston, Mass., for petitioner.
Robert A. Butterworth, Atty. Gen. and Robert J. Krauss, Asst. Atty. Gen., Tampa, for respondent.
PER CURIAM.
William H. Kelley, a prisoner under sentence of death, petitions this Court for a writ of habeas corpus. We have jurisdiction under article V, section 3(b)(9) of the Florida Constitution.
Kelley was convicted of first-degree murder for the 1966 contract killing of Charles Von Maxcy. Kelley was hired to kill Maxcy by Mrs. Maxcy's lover, John Sweet. The trial court followed the jury's recommendation *263 and sentenced Kelley to death. This Court affirmed the conviction and sentence on direct appeal. Kelley v. State, 486 So.2d 578 (Fla.), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986). His subsequent petition for relief pursuant to Florida Rule of Criminal Procedure 3.850 was denied by the circuit court after an evidentiary hearing, and this Court affirmed. Kelley v. State, 569 So.2d 754 (Fla. 1990).
Kelley raises the following claims in this petition: (1) his appellate counsel was ineffective; (2) the application of the death penalty statute to this crime is ex post facto; and (3) the aggravating factors of pecuniary gain and cold, calculated, and premeditated are overbroad.
We first address Kelley's claim of ineffective assistance. In evaluating this type of claim, this Court must determine "first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result." Pope v. Wainwright, 496 So.2d 798, 800 (Fla. 1986), cert. denied, 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987).
Kelley first claims that his appellate counsel was ineffective for failing to argue that the prosecutor made several improper comments during closing argument.[1] None of these comments were objected to at trial. Appellate counsel cannot be ineffective for failing to raise claims which were not preserved due to trial counsel's failure to object. See, e.g., Roberts v. State, 568 So.2d 1255, 1261 (Fla. 1990); Suarez v. Dugger, 527 So.2d 190, 193 (Fla. 1988); Bertolotti v. Dugger, 514 So.2d 1095, 1097 (Fla. 1987).
Kelley argues that trial counsel failed to object because the grounds were unknown to him at the time due to the State's failure to disclose material exculpatory evidence. We fail to see the relevance of the reason for trial counsel's failure to object. The fact remains that these claims were not preserved at trial, for whatever reason, and appellate counsel therefore acted reasonably in not including these claims on direct appeal.
We reject Kelley's argument that this Court's previous holding that this claim should have been raised on direct appeal is dispositive. See Kelley, 569 So.2d at 756. The fact that we held that the claim was not appropriately raised in a motion for postconviction relief, and instead should have been raised on direct appeal, does not imply in any way that appellate counsel necessarily was ineffective for failing to raise it at that time. As we stated previously, appellate counsel was not ineffective because the claim was already barred by trial counsel's failure to object.
Furthermore, even if this claim had been raised on direct appeal, we would have found it to be without merit.[2] All of Kelley's arguments in this petition are refuted by this Court's decision on his 3.850 appeal.[3] Basically, Kelley's argument on *264 this issue is an attempt to relitigate his 3.850 motion. We refuse to revisit these issues simply because they are now raised under the guise of an ineffective assistance claim.
Kelley's next asserted omission on the part of appellate counsel relates to alleged misconduct by the state attorney in coaching a witness during cross-examination. Abe Namia, a private detective who was originally hired by Sweet's defense attorney,[4] testified that in 1967 Sweet admitted to him that he had hired Kelley to kill Maxcy. On cross-examination, the defense attempted to show that Namia was making up this story, presumably to collect reward money. Namia was confronted with reports he had made during his investigation, none of which mentioned Sweet's confession. At this point, the prosecutor asked that a recess be taken in order to allow him to review these reports. Kelley now claims that appellate counsel was ineffective for failing to argue on appeal that during this time the State improperly consulted with the witness and helped him to prepare for cross-examination. He bases this claim on the prosecutor's statements after the recess that he and Namia had conferred and Namia identified the papers as reports he had prepared, although he did not know whether there were additional reports. Again, there was no objection by trial counsel at this time, and the issue of any unethical preparation of the witness was therefore not preserved for review. Furthermore, Kelley has made no showing that the prosecutor advised Namia as to how to testify, but only that he examined reports that had not previously been disclosed to the State and that were now being used to impeach its witness. There is no reason to believe that any misconduct occurred during the recess. Since this claim was both unpreserved and unsubstantiated, counsel cannot have been ineffective for failing to raise it.
Kelley next argues that his appellate counsel was ineffective for failing to argue that his robbery conviction was too remote in time to be considered in aggravation. Even if this claim had been raised on direct appeal, it would have been rejected. This Court has subsequently held that because the death penalty statute is silent as to the time or place of the previous conviction, even a conviction remote in time may properly be considered as aggravating. Thompson v. State, 553 So.2d 153, 156 (Fla. 1989), cert. denied, 495 U.S. 940, 110 S.Ct. 2194, 109 L.Ed.2d 521 (1990).
Finally, Kelley claims that his appellate counsel should have argued that the jury instructions improperly shifted the burden of proof to Kelley to prove that life was the appropriate punishment. Again, trial counsel did not preserve this issue for appeal by objecting. We also note that the instructions were not erroneous. See Bertolotti v. Dugger, 883 F.2d 1503, 1524-25 (11th Cir.1989), cert. denied, ___ U.S. ___, 110 S.Ct. 3296, 111 L.Ed.2d 804 (1990).
We therefore conclude that Kelley has shown no basis for a finding that the performance of his appellate counsel was deficient in any manner, or that any alleged deficiency was prejudicial, and we reject his ineffectiveness claim.
We turn now to Kelley's argument that the application of the death penalty statute to a crime committed before its enactment in its present state is ex post facto. Although this claim was specifically rejected by the Supreme Court in Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), Kelley argues that the issue should be reconsidered because Dobbert has been overruled by Miller v. Florida, *265 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987).[5]
The Miller decision did not change the ex post facto analysis, as Kelley contends, nor did it in any way imply that Dobbert was no longer good law. Indeed, the Court in Miller referred to Dobbert several times as an example of a statutory change which did not violate ex post facto standards. Accordingly, we reject Kelley's argument that the ex post facto issue should be revisited.
Finally, Kelley argues that the aggravating factors of pecuniary gain and cold, calculated, and premeditated[6] are improperly and overbroadly employed. Kelley bases this claim on Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), decided after the direct appeal in this case. This Court has rejected this claim in other cases, and we summarily reject it here as well. See, e.g., Brown v. State, 565 So.2d 304, 308 (Fla.), cert. denied, ___ U.S. ___, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990); Jones v. Dugger, 533 So.2d 290, 292-93 (Fla. 1988).
For the foregoing reasons, Kelley's petition for a writ of habeas corpus is denied.
It is so ordered.
SHAW, C.J., and OVERTON, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.
McDONALD, J., recused.
NOTES
[1] Kelley contends that the following arguments were improper: (1) that Kaye Carter, a State witness, could not be expected to be able to identify Kelley seventeen years after spending a few hours with him; (2) that it was very unlikely that Kelley's information about the homicide was gleaned from newspaper articles; and (3) that Sweet did not have to "give them [the authorities] Kelley" in order to get immunity for Massachusetts crimes.
[2] We therefore also reject Kelley's claim that these comments constituted fundamental error.
[3] As to Kaye Carter's identification, although trial counsel did not know that Carter had been unable to identify Kelley's photograph during the police investigation, the fact that she was able to identify his picture at Sweet's second trial negates Kelley's argument that the prosecutor attempted to mislead the jury by stating that it was the passage of time which caused Carter to be unable to remember Kelley during his trial. See Kelley v. State, 569 So.2d 754, 757-58 (Fla. 1990). As to the newspaper articles, although trial counsel was not specifically aware that the prosecutor had been contacted by a reporter, counsel was aware of the possibility of the existence of articles, as they were mentioned in cross-examination, and could have discovered them. See id. at 759-60. The prosecutor could reasonably comment on the unlikelihood of Kelley's knowledge being acquired through the media since there was no evidence introduced that Kelley had actually read any of these articles. As to Sweet's immunity, there was "no evidence to support the inference that Sweet's Massachusetts immunity was contingent upon his testimony in [Kelley's] Florida trial," and the prosecutor could properly comment on that fact. See id. at 758.
[4] Sweet was tried twice for the Maxcy murder. The first trial resulted in a mistrial, and the second ended in a conviction which was overturned on appeal.
[5] In Miller, the Court found that a change in the sentencing guidelines which increased the presumptive sentence for the defendant's crime was a substantive change which was more onerous to the defendant and therefore violated the ex post facto clause as applied to crimes committed before the change. Miller v. Florida, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987). In contrast, the Court in Dobbert found that a change in the death penalty statute was a procedural change which was not onerous to the defendant; the change in sentencing procedures altered the method employed to determine the appropriate sentence, but did not change the quantum of punishment. Dobbert v. Florida, 432 U.S. 282, 294, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977).
[6] § 921.141(5)(f), (i), Fla. Stat. (1983).