PER CURIAM.
 

 Robert Rimmer appeals an order of the circuit court denying his postconviction motion to vacate his convictions of first-degree murder and sentences of death filed under Florida Rule of Criminal Procedure 3.851. He also petitions this Court for a writ of habeas corpus. We have jurisdiction.
 
 See
 
 art. V, § 3(b)(1), (9), Fla. Const. For the reasons explained below, we affirm the circuit court’s denial of post-conviction relief, and we deny Rimmer’s petition for writ of habeas corpus.
 

 OVERVIEW
 

 Rimmer was convicted and sentenced to death for the 1998 murders of Bradley Krause and Aaron Knight. During a robbery of a car audio equipment store, Rim-mer shot and killed both men. In addition to the two murder convictions, each of which resulted in a sentence of death, Rimmer was also convicted of and sentenced to terms of imprisonment for nine other felonies: three counts of armed robbery, four counts of armed kidnapping, one count of attempted armed robbery, and one count of’ aggravated assault. We affirmed Rimmer’s convictions and sentences on direct appeal.
 
 See Rimmer v. State,
 
 825 So.2d 304 (Fla.2002).
 

 Subsequently, pursuant to rule 3.851, Rimmer filed a motion seeking posteonviction relief. Following an evidentiary hearing on several of Rimmer’s claims, the circuit court denied the motion in its entirety. Rimmer now challenges the circuit court’s denial of postconvietion relief and raises various claims. Additionally, Rim-mer petitions this Court for a writ of habe-as corpus. We begin our opinion by reviewing the facts of this case. We then turn to the claims raised in Rimmer’s 3.851 motion. Finally, we address Rimmer’s ha-beas petition.
 

 
 *770
 
 FACTS AND PROCEDURAL BACKGROUND
 

 On May 2, 1998, Rimmer and codefen-dant Kevin Parker robbed an Audio Logic store in Wilton Manors, Florida. During the robbery, Rimmer shot and killed two victims, Bradley Krause and Aaron Knight. Both men were Audio Logic employees. On that day, in the store’s installation area, Krause and Knight were confronted and forced to lie face down on the floor, and their hands were duct-taped behind their backs.
 

 During the robbery, Rimmer also confronted three customers: Joe Moore, Louis Rosario, and Kimberly Davis Burke.
 
 [1]
 
 Moore was leaving the store when he was confronted by Rimmer, who displayed a gun and ordered Moore to go back inside into the installation area. Rosario, who had been standing outside, was also ordered to go into the installation area, although he was unable to identify which perpetrator ordered him to do so. Similar to Krause and Knight, they were also forced to lie face down on the floor with their hands duct-taped behind their backs.
 

 During.this time, Burke had been sitting in the store’s waiting room with her two-year-old daughter. She saw a purplish Ford Probe and a Kia Sephia drive up to the store, and she saw. codefendant Parker get out of the Kia Sephia.. Parker came into the waiting room, briefly spoke to Burke, and walked into the installation area. Later, Rimmer came from the installation area into the waiting room where Burke was sitting. Rimmer told her that her boyfriend (Moore) was waiting for her in the installation area, and she went there and saw the four men lying face down on the floor. Burke understood what was happening and immediately sat down with her young daughter in her lap. Unlike the others, she was not forced to lie face down on the floor, but she was told not to look while Rimmer and two other people loaded stereo equipment into the Ford Probe.
 
 [2]
 

 Krause, Knight, and Moore were robbed of their personal belongings, which included Moore’s wallet and cellular phone. Rimmer asked Knight for the keys to the cash register and asked if anyone owned a weapon. Knight told Rimmer that he kept a gun in a desk drawer in the store, and Rimmer retrieved it. Rimmer also asked whether the store had surveillance cameras, and Krause and Knight told him that the store did not have any.
 

 After the stereo equipment was loaded into the Ford Probe, Rimmer began to drive the car out of the installation area and then stopped. He returned and confronted Knight, saying, “You know me.” Knight said that he did not know Rimmer, to which Rimmer responded: ‘You do remember me.” Rimmer then placed his pistol to the back of Knight’s head and shot him. Knight died instantly. Moore jumped to his feet at the sound of the gunshot, and Rimmer pointed the pistol at him, telling him to lie back down. Rimmer then walked over to Krause and shot him in the back of the head. Krause lost consciousness instantly. Rimmer released the remaining victims after thanking them for their cooperation and telling them to “have a nice day.” Krause died later at a hospital. The police recovered from the crime scene shell casings and a spent projectile
 
 *771
 
 fragment which were later identified as .380 caliber components, and the State’s firearm expert testified that they came from Rimmer’s gun.
 

 On May 4, 1998, two days after the robbery, Burke provided a description of the shooter. The description was used to create a sketch which was shown to the owner of the Audio Logic store and to several competitors. One of the competitors recognized Rimmer from an encounter several months earlier when Rimmer came to his store and complained about a speaker installation job recently completed by Audio Logic. With this information, the police used Audio Logic’s records to obtain Rimmer’s identity, telephone number, and address.
 

 On May 8, 1998, Burke and Moore were shown a photo lineup that included Rim-mer, and both identified Rimmer as the shooter. Later, they also identified Rim-mer from a live lineup. The owner of Audio Logic, who was not present during the robbery, also recognized Rimmer from an earlier conversation that they had concerning the installation of stereo equipment in Rimmer’s car.
 

 On May 10, 1998, Rimmer was arrested following a twelve-minute high-speed car chase that ended at Rimmer’s home. During the chase, while driving his 1978 Oldsmobile, Rimmer threw his gun, Moore’s wallet, and the gun stolen from Audio Logic out of the ear. Rimmer’s wife arrived at the home in the Ford Probe shortly after Rimmer’s arrest. Both the Ford and the Oldsmobile were registered to Rimmer.
 

 The police obtained a warrant to search the Oldsmobile, and that search revealed an organizer which contained a lease agreement for a storage facility. The storage unit, rented by Rimmer on May 7, 1998, was also searched pursuaht to
 
 á
 
 warrant. The search of the storage unit revealed stereo equipment that was stolen from Audio Logic. Fingerprints of both Rimmer -and eodefendant Parker were found on the stolen equipment, and a surveillance tape from the storage facility showed Rimmer renting the unit.
 

 Rimmer was indicted for two counts of first-degree murder for the deaths of Krause and Knight. Additionally, the indictment charged Rimmer with three counts of armed robbery, four counts of armed kidnapping, one count of attempted armed robbery, and one count of aggravated assault with a firearm. Rimmer and Parker were charged in the same indictment and faced identical charges.
 

 Rimmer and Parker were tried together, and both defendants were convicted of all eleven felonies. Separate penalty phases were conducted for each defendant, and by a vote of nine to three, the jury recommended that Rimmer be sentenced to death. As explained in its sentencing order, the trial court found six aggravating factors:
 

 (1) the murders were committed by a person convicted of a felony and under a sentence of imprisonment; (2) the defendant was previously convicted of another capital felony and a felony involving use or threat of violence to the person; (3) the murders were committed while the defendant was engaged in a robbery and kidnapping; (4) the murders were committed for the purpose of avoiding or preventing lawful arrest; (5) the murders were especially heinous, atrocious, or cruel (HAC); and (6) the murders were cold, calculated, and pre-meditated (CCP). The trial court only gave moderate weight to the HAC and murder in the course of a felony aggravators; the court gave, great weight to the remaining four aggravators.
 

 Rimmer,
 
 825 So.2d at 311 (footnote omit
 
 *772
 
 ted).
 
 [3]
 
 Moreover, the trial court found no statutory mitigating factors, but it did find five nonstatutory mitigating factors:
 

 (1) Rimmer’s family background (very little weight); (2) Rimmer is an excellent employee (some weight); (3) Rimmer has. helped and ministered to others (minimal weight); (4) Rimmer is a kind, loving father (not much weight); and (5) Rimmer suffers from a schizoaffective disorder (little weight).
 

 Id.
 
 The trial court followed the jury’s recommendation and sentenced Rimmer to death for the murders, and it also imposed sentences of imprisonment for the other nine felonies.
 
 [4]
 

 Rimmer challenged his convictions and sentences on direct appeal and raised ten issues.
 
 [5]
 
 This Court affirmed Rimmer’s convictions and sentences, but it struck HAC as an aggravating circumstance after concluding that there was insufficient evidence to support the trial court’s finding that the murders were especially heinous, atrocious, or cruel. However, this Court deemed the error harmless. Additionally, this Court concluded on direct appeal that Officer Kelley, one of the law enforcement officers involved in Rimmer’s capture, was improperly allowed to testify as a rebuttal witness for the State. However, this Court determined that there was no reasonable possibility the error caused by allowing Kelley’s rebuttal testimony contributed to the verdict.
 

 After this Court affirmed Rimmer’s convictions and sentences, Rimmer filed a rule 3.851 postconviction motion.
 
 [6]
 
 The circuit
 
 *773
 
 court held a
 
 Huff
 

 [7]
 

 hearing to determine whether the claims Rimmer raised in his motion required an evidentiary hearing. Following the
 
 Huff
 
 hearing, the court granted an evidentiary hearing on the following six claims: (4). Rimmer’s convictions are unreliable because trial counsel failed to adequately investigate and prepare a defense and to adequately challenge the State’s case; (5) Rimmer’s sentencing phase was unreliable because trial counsel failed to adequately investigate and prepare mitigating evidence and to adequately challenge the State’s case; (6) Rimmer’s right to effective counsel was violated because of trial counsel’s conflict of interest; (8) Rimmer was deprived of his rights under
 
 Ake v. Oklahoma;
 
 (9) the State withheld material and exculpatory evidence and violated Rimmer’s constitutional rights
 
 (Brady
 

 [8]
 

 claim); and (11) penalty phase counsel was ineffective for failing to argue the unconstitutionality of Rimmer’s death sentence. Following the evidentiary hearing, the court issued an order that denied postconviction relief. Rimmer now appeals the court’s order and also raises additional claims in a petition for writ of habeas corpus. We will address Rimmer’s postconviction appeal first, and then we will address Rimmer’s habeas petition.
 

 RIMMER’S 3.851 CLAIMS
 

 The Issues on Appeal
 

 Rimmer raises multiple issues in his appeal of the circuit court’s denial of postcon-viction relief. In addition to claims that both guilt phase and penalty phase counsel were, ineffective in the preparation for and presentation of his trial, that guilt phase counsel had a conflict of interest, and that the State, committed
 
 Brady
 
 violations, Rimmer also alleges that certain procedural rulings made by the trial court deprived him of a full and fair evidentiary hearing. We will discuss the procedural matters first, then discuss Rimmer’s remaining claims.
 

 Procedural Rulings
 

 First, Rimmer contends that the circuit court improperly excluded five witnesses whose testimony he wished to present during his evidentiary hearing, and that the court improperly granted the State’s motion for discovery pertaining to the pro
 
 *774
 
 posed witnesses. We disagree and find no error in the court’s rulings.
 

 At the evidentiary hearing, Rim-mer sought to present the testimony of codefendant Parker, Rosario’s girlfriend, and victims Moore, Rosario, and Burke. The State filed a motion for discovery that sought a proffer of each witness’s testimony. After the court granted the State’s motion, Rimmer proffered the testimony and argued that each witness’s testimony was necessary to support Rimmer’s mis-identification defense and demonstrate how trial counsel was ineffective in investigating and presenting it. In response, the State filed a motion to strike the witnesses’ testimony. The court granted the State’s motion to strike, but it reserved the right to revisit the issue if Rimmer later made a sufficient showing that the witnesses’ testimony was relevant. Rimmer argues that the court should not have required him to proffer the testimony, nor should the court have precluded the testimony at the evi-dentiary hearing. We disagree with Rim-mer’s arguments.
 

 In
 
 State v. Lewis,
 
 656 So.2d 1248, 1249 (Fla.1994), this Court concluded that a trial court may permit pre-hearing discovery during postconvictdon proceedings under rule 3.850. We stated that in ruling on such a motion for postconviction discovery, the court shall consider “the issues presented, the elapsed time between the conviction and the post-conviction hearing, and burdens placed on the opposing party and witnesses, alternative means of securing the evidence, and any other relevant facts.”
 
 Lewis,
 
 656 So.2d at 1250 (citing
 
 People ex rel. Daley v. Fitzgerald,
 
 123 Ill.2d 175, 121 Ill.Dec. 937, 526 N.E.2d 131, 135 (1988)). We reject Rimmer’s criticism of the court’s analysis of the State’s motion for discovery, and we conclude that the trial court did not abuse its discretion in granting the State’s motion and requiring the proffer.
 

 We also conclude that the court did not abuse its discretion when it granted the State’s motion to strike the testimony of the five witnesses. It is well settled that “[t]he admissibility of evidence is within the sound discretion of the trial court, and the trial court’s determination will not be disturbed on appellate review absent a clear abuse of that discretion.”
 
 Brooks v. State,
 
 918 So.2d 181, 188 (Fla.2005). The court granted the State’s motion on the grounds that the testimony was not relevant. However, the court reasonably allowed Rimmer the possibility of introducing the witnesses’ testimony later if he demonstrated relevance. We find no abuse of discretion in the trial court’s ruling.
 

 Second, Rimmer contends that the circuit court improperly denied certain public records demands. Although the court granted many of Rimmer’s demands, it denied Rimmer’s demands for information relating to thirty-four people whose names appeared in various police reports or case records. With respect to these people, Rimmer’s demands sought the following from the Broward Sheriff’s Office, the Florida Department of Law Enforcement, and the State:
 

 Any and all files (regardless of form and including photographs, sound or video recordings, physical evidence, and electronic mail and/or files) related to any matter in which the below-listed individuals were the subject of an investigation, accused, charged and/or convicted of a crime, and/or was a witness, suspect, or victim.
 

 The agencies objected to Rimmer’s demands on the grounds that the demands were overly broad and unduly burdensome, and the court concluded that Rim-mer did not satisfy the burden that he was
 
 *775
 
 required to- meet under Florida Rule of Criminal Procedure 3.852 (Capital Post-conviction Public Records Production). Under rule 3.852(g)(3), additional public records are to be produced when all of the following criteria are met: (1) collateral counsel has made a timely and diligent search; (2) the written demand for records specifically identifies the additional records that are not at the records repository; (3) the records sought are relevant to the subject matter of a rule 3.851 proceeding or appear reasonably calculated to lead to the discovery of admissible evidence; and (4) the additional public records demand is not overly broad or unduly burdensome.
 

 The postconviction record contains detailed orders which reflect the court’s careful consideration of the parties’ positions on this issue. Among the information considered by the court was the ability of the agencies to conduct searches of the degree required by Rimmer’s demand. We emphasize that rule 3.852 “is not intended to be a procedure authorizing a fishing expedition for records unrelated to a colorable claim for postconviction relief.”
 
 Sims v. State,
 
 753 So.2d 66, 70 (Fla.2000). The court did not abuse its discretion in denying Rimmer’s demands.
 

 Third, Rimmer contends that his post-conviction record is incomplete. However, “[b]are allegations of unrecorded depositions and proceedings are legally insufficient” to warrant relief.
 
 Armstrong v. State,
 
 862 So.2d 705, 721 (Fla.2003). Consequently, we find no merit in this claim.
 

 Ineffective Assistance of Counsel
 

 Rimmer also asserts that both guilt and penalty phase counsel provided him with ineffective assistance of counsel, and that as a result, he is entitled to postconviction relief. However, Rimmer bears the burden of demonstrating that counsel’s performance met the standard of ineffectiveness as explained in the United States Supreme Court’s decision in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Rimmer’s claims of ineffective assistance of counsel are subject to the following analysis:
 

 First,' the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial' deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.' A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
 

 Maxwell v. Wainwright,
 
 490 So.2d 927, 932 (Fla.1986) (citations omitted). Therefore, in order to be successful, Rimmer’s claims must demonstrate both deficient performance and prejudice that are consistent with the standard as outlined in
 
 Strickland.
 
 Because an analysis of a claim of ineffective assistance of counsel presents mixed questions of law and fact, this Court, employs a mixed standard of review, deferring to the circuit court’s factual findings that are-supported by competent,-substantial evidence, but reviewing the court’s legal conclusions de novo.
 
 See Sochor v. State,
 
 883 So.2d 766, 771-72 (Fla.2004). Our analysis of Rimmer’s claims is guided by a strong presumption that trial counsel’s performance was not ineffective.
 
 See Strickland,
 
 466 U.S. at 690, 104 S.Ct. 2052. “A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.”
 
 Id.
 
 at 689, 104 S.Ct. 2052.
 
 *776
 
 The defendant carries the burden to overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.”
 
 Id.
 
 (quoting
 
 Michel v. Louisiana,
 
 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 88 (1955)). Moreover, we note that trial counsel’s “strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.”
 
 Occhicone v. State,
 
 768 So.2d 1037, 1048 (Fla.2000). Rimmer contends that there were multiple instances of ineffective assistance of counsel by both guilt and penalty phase counsel, but we conclude that Rim-mer has demonstrated neither deficiency nor prejudice as to the majority of his claims. Although we find that the performance of penalty phase counsel was deficient with respect to the investigation of possible mitigation, we conclude that Rimmer has not made a sufficient showing of prejudice. Therefore, Rimmer is not entitled to relief.
 

 Guilt Phase Ineffectiveness Claims
 

 Rimmer alleges several instances of ineffective assistance of guilt phase counsel, Richard Garfield. First, Rimmer argues that counsel failed to properly develop the defense theory of misidentification. Second, Rimmer contends that counsel failed to properly investigate other suspects and leads. Third, Rimmer contends that counsel failed to rehabilitate the testimony of Rimmer’s wife and that counsel failed to assert a marital privilege objection. Fourth, Rimmer contends that counsel improperly waived speedy trial. As we explain below, we find no merit in any of these claims.
 

 Ineffective Development of Misidentification Defense
 

 Rimmer contends that counsel was ineffective in developing and presenting the defense theory of misidentification. Specifically, Rimmer argues that counsel failed to properly investigate and present his prior medical records from the Florida Department of Corrections (DOC), failed to rebut the testimony of Detective Kelley, and failed to obtain an eyewitness identification expert. We conclude that each of these claims is without merit.
 

 Rimmer, who contends that he must wear prescription eyeglasses in order to see properly, argues that counsel was ineffective because he failed to use Rimmer’s DOC medical records in aid of his defense that he was not the shooter. Rimmer states that he is unable to wear contacts because of corneal ulcers, and argues that the DOC records would have aided his defense by demonstrating his dependence upon prescription glasses and enhancing trial testimony that the shooter did not wear glasses.
 

 At the evidentiary hearing, counsel testified that he did not want to use Rimmer’s DOC records to support the misidentification defense because doing so would have alerted the jury to the fact that Rimmer previously spent time in prison. In its order denying postconviction relief, the circuit court concluded that counsel’s failure to use the DOC records did not amount to deficient performance. The court noted that rather than make the jury aware of Rimmer’s prison record, counsel chose to introduce more recent testimony about Rimmer’s eyesight through two witnesses. One of these witnesses was an optician who filled an eyeglasses prescription for Rimmer less than three months before the murders, and the other witness was an optometrist who had examined Rimmer’s vision and testified that Rimmer required corrective lenses in order to see properly. The optometrist testified that Rimmer’s
 
 *777
 
 eyesight was 20/400 and that Rimmer was legally blind without corrected vision. Without corrected vision, the optometrist said, Rimmer would have to squint and get close to an object to see it, and also would be unable to drive without getting into an accident. The court concluded that counsel’s decision to introduce the testimony of these witnesses instead of the DOC records was a well-reasoned decision. Competent, substantial evidence in the record supports the court’s findings, and we agree with the circuit court’s conclusion that counsel’s performance was not deficient. Therefore, we find no merit in Rimmer’s claim.
 

 Next, Rimmer argues that trial counsel was ineffective for failing to rebut the testimony of Officer Kelley. Kelley was one. of the officers involved in the high-speed chase that led to Rimmer’s arrest on May 10,1998, and he was originally called as a State witness to testify about that pursuit. However, the State recalled Kelley as a rebuttal witness in order to counter the testimony offered by the defense regarding Rimmer’s eyesight. The State used Kelley, whose uncorrected vision was 20/300, to testify that although. objects and people appeared blurry without his eyeglasses, he could still see them. Thus, the inference that the State hoped the jury would draw was that because the vision-impaired Kelley could see without his eyeglasses, so could Rimmer. Defense counsel contemporaneously objected to Kelley’s testimony and moved for a mistrial that was denied by the trial court. On direct appeal, this Court concluded that the admission of Kelley’s rebuttal testimony was erroneous, but that in light of the evidence of Rimmer’s guilt, there was “no reasonable possibility that the erroneous admission ... contributed to the verdict.”
 
 Rimmer,
 
 825 So.2d at 322 (citing
 
 State v. DiGuilio,
 
 491 So.2d 1129, 1135 (Fla.1986)).
 

 At the evidentiary hearing, Rimmer introduced the testimony of Dr. Darrell Tep-pler, who • stated that Kelley’s' testimony about his own eyesight could have led the jury to make an erroneous conclusion about Rimmer’s eyesight. Rimmer now argues that the failure to use testimony like that of Dr. Teppler to rebut Kelley’s testimony amounted to ineffective assistance of counsel. Because we have determined that the admission of Kelley’s rebuttal testimony was harmless error, Rimmer cannot demonstrate prejudice under the second prong of
 
 Strickland. See, e.g., Cox v. State,
 
 966 So.2d 337, 347-48 (Fla.2007). Therefore, Rimmer is not entitled to relief.
 
 [9]
 

 Additionally, Rimmer argues that counsel was ineffective for failing to obtain an expert who would challenge the eyewitnesses’ identifications. At the evidentiary hearing, Rimmer’s expert testified that eyewitness identifications 'are generally unreliable, especially in stressful situations. The trial court rejected this claim of ineffective assistance of counsel and noted that counsel “continually challenged the identification of the Defendant prior to and during trial.” Because counsel conducted an effective cross-examination of the eyewitnesses and consistently attacked the eyewitness identifications and the process of making those identifications, Rimmer has not demonstrated that he was prejudiced by counsel’s failure to obtain an eyewitness identification expert.
 
 See Rose v. State,
 
 617 So.2d 291, 297 (Fla.1993). Consequently, Rimmer is not entitled to relief.
 

 Ineffective Investigation of Other Suspects and Leads
 

 Rimmer also argues that trial counsel was ineffective because he failed
 
 *778
 
 to properly investigate other suspects and leads. Rimmer’s argument fails because he has not demonstrated prejudice that undermines this Court’s confidence in his guilt. Two eyewitnesses, Burke and Moore, identified Rimmer as the person who robbed Audio Logic and shot Krause and Knight. The description that Burke provided to the sketch artist was so consistent with Rimmer’s actual appearance that an employee of one of Audio Logic’s competitors recognized the person in the sketch as Rimmer. Burke also had- an opportunity to view Rimmer in a noneon-frontational mode while sitting in the waiting room before she walked into the installation area and observed the robbery taking place. Additionally, at the time of his arrest, Rimmer had just led police on a high-speed chase during which he threw the gun stolen from Audio Logic, one of the victims’ wallets, and the murder weapon out of the car. Moreover, Rimmer owned a car of the same make, model, and description that was seen at Audio Logic before and during the robbery. Audio equipment stolen from Audio Logic and bearing Rimmer’s fingerprints was' found in a storage unit that Rimmer rented just days after the robbery. In light of this overwhelming evidence of guilt, Rimmer cannot demonstrate prejudice. Rimmer is not entitled to relief.
 

 Testimony of Rimmer’s Wife
 

 Rimmer’s next claim of ineffective assistance of counsel relates to the testimony of his wife, Joanne, who was a witness for the’defense. Joanne testified during direct examination that Rimmer had an alibi for the time of the robbery because he left home with his sons that morning to go fishing. She also testified that she, not Rimmer, drove the Ford Probe that morning, and he drove the Oldsmobile. During cross-examination, the State sought to attack her credibility and to use her knowledge of Rimmer’s income and monthly expenses to suggest that Rimmer had an inordinate amount of money in his possession at the time of his arrest. Rimmer argues that counsel was ineffective for failing to rehabilitate Joanne’s testimony and that as a result, the jury was less likely to believe the alibi she provided.
 

 Here, Rimmer has demonstrated neither deficient performance nor prejudice. When asked about his failure to address Joanne’s testimony, counsel testified that he did not object because he did not believe that the testimony was inconsistent with the defense theory, and he did not want to bring attention to what he believed was an insignificant issue. The circuit court concluded that counsel’s handling of Joanne’s testimony was “a matter of reasoned trial strategy and not a deficiency.” We find no error in the court’s determination that counsel’s strategic decision was reasonable.
 

 Rimmer also argues that counsel’s failure to object to certain questions asked by the State constituted ineffective assistance of counsel because the questions were an improper comment on his right to remain silent. Rimmer’s entire argument on this issue consists of the following: “At trial, the State questioned Mr. Rimmer’s wife about communications she had had with her husband pertaining to the case. Trial counsel failed to object for no strategic reason. Trial counsel’s failure to object was deficient.”
 

 Rimmer argued on direct appeal “that the prosecutor improperly solicited comment on his right to remain silent by asking his wife, Joanne Rimmer, about her conversations with [Rimmer] as to his involvement in the double homicide.”
 
 Rimmer,
 
 825 So.2d at 322. Although we concluded that “the State’s question [came]
 
 *779
 
 very close to infringing on [Rimmer’s] right to remain silent,” we nonetheless determined that “the question coupled with the answer [that she did not ask Rimmer about the murders] was not fairly susceptible of being interpreted by the jury as a comment on the defendant’s failure to testify.”
 
 Id.
 
 Because we previously concluded that this issue was without merit, Rim-mer’s ineffective assistance of counsel claim is likewise without merit.
 

 Speedy Trial
 

 Rimmer also argues that counsel waived speedy trial and did so improperly because the State was at fault for failing to provide timely discovery. At the evidentiary hearing, counsel recalled a status conference in July 1998, but stated that he was not certain that he actually waived Rimmer’s right to a speedy trial. However, counsel testified that to ensure that he would have enough time to prepare for trial, he agreed to a trial date of January 18, 1999. Because of a holiday, trial began on January 19, 1999, some eight and one-half months after the murders. Rimmer has not shown how counsel’s performance was deficient and has not shown how he was prejudiced. This claim has no merit.
 

 Conflict of Interest
 

 Rimmer also argues that he was deprived of effective counsel during the guilt phase because counsel had a conflict of interest. Effective.representation for the purpose of the Sixth Amendment requires that counsel be free of actual conflict.
 
 See Hunter v. State,
 
 817 So.2d 786, 791-92 (Fla.2002). In order to prevail on this claim, Rimmer must demonstrate an actual conflict that adversely affected counsel’s performance.
 
 Id.
 
 Rimmer argues that the source of the conflict is a letter written by counsel to the lead detective between the end of the guilt phase and the beginning of the penalty phase:
 

 Dear Detective Lewis,
 

 Please accept my congratulations for your role in the successful prosecution of Robert Rimmer and Kevin Parker for committing the double homicide and robberies that occurred on May 2, 1998 in the above-referenced matter.
 

 You demonstrated that hard work and diligence are ultimately rewarded. Hopefully the families of the victims and the community of Wilton Manors recognize you for your accomplishments in this case.
 

 Warmest Regards,
 

 Richard Garfield
 

 We conclude that Rimmer has not met his burden of “ ‘identifying] specific evidence in the record that suggests that ... [his] interests were impaired or compromised’ for the benefit of [his] attorney.”
 
 State v. Larzelere,
 
 979 So.2d 195, 209 (Fla.2008) (quoting
 
 Herring v. State,
 
 730 So.2d 1264, 1267 (Fla.1998)). At the evidentiary hearing, counsel testified at length about the letter, and he stated that he wrote it as. an act of good will and was motivated to do so after hearing how the detective was subjected to racist comments during the course of-another, unrelated investigation. The circuit court concluded in its order:
 

 The record also demonstrates that Mr. Garfield was aggressive in challenging work done by Detective Lewis, both at trial, and pretrial. Mr. Garfield argued pretrial motions to suppress based upon the work done by Detective Lewis. Mr. Garfield cross-examined Detective Lewis during the trial and advanced legal arguments critical of the work done on the case by Detective Lewis.
 

 This .Court finds Mr. Garfield’s explanation for the letter to be adequate and does not find that there was any conflict of interest that affected the defendant’s case.
 

 
 *780
 
 The court’s findings are based on competent, substantial evidence in the record, and Rimmer is not entitled to relief on this claim.
 

 Penalty Phase Ineffectiveness Claims
 

 Rimmer also alleges that his penalty phase counsel, Hale Schantz, also provided ineffective assistance of counsel. Rim-mer’s most significant allegation is that counsel failed to properly investigate and present mitigating evidence. Additionally, Rimmer asserts that counsel failed to object to certain comments made by the prosecutor and failed to object to certain aggravating circumstances. We conclude that while some of Rimmer’s claims have merit as to counsel’s deficient performance, Rimmer has not demonstrated the necessary element of prejudice, and therefore, he is not entitled to relief.
 

 Investigation and Presentation of Mitigating Evidence
 

 According to Rimmer, counsel failed to conduct an adequate background investigation. Rimmer contends that counsel conducted only a limited investigation of his family and social history, religious and cultural experiences, employment, and education. In particular, Rimmer argues that counsel’s inadequate investigation failed to produce evidence that he suffered a traumatic childhood that included physical abuse at the hands of his father. Counsel testified that while preparing for the penalty phase, he had no indication that Rim-mer was physically abused during his childhood. Moreover, Rimmer’s mother testified that she did not tell counsel about the abuse because she was embarrassed. Counsel also testified that he had a great deal of difficulty getting potential witnesses to speak with him. However, at the evidentiary hearing, witnesses testified that Rimmer and his brothers grew up in an extremely unstable and often unsafe environment. These witnesses included Rimmer’s aunt, Jeanette, who provided credible testimony about Rimmer’s childhood and the abuse sustained at the hands of his father. The evidence of Rimmer’s childhood abuse notwithstanding, our confidence in the outcome has not been undermined. In light of the significant aggravation in this case, we conclude that Rimmer has not satisfied the prejudice prong of
 
 Strickland,
 
 as is necessary to prevail on a claim of ineffective assistance of counsel.
 

 Rimmer also asserts that counsel was ineffective for failing to present the testimony of his brother O’Dell and his girlfriend Sabrina as mitigation. We disagree. Counsel testified that he made a strategic decision to use neither O’Dell nor Sabrina as a mitigation witness. Counsel testified that he was concerned that the jury might become aware of O’Dell’s prison sentence for murder, and he did not want to create the impression for the jury that Rimmer is a part of a family of murderers. Additionally, counsel testified that he made a strategic decision not to present the testimony of Rimmer’s girlfriend because her testimony would have eroded the picture that he was trying to paint of Rimmer as a loving and committed husband and father. Counsel cannot be deemed ineffective for his strategic decision not to use O’Dell and Sabrina as witnesses.
 
 See Davis v. State,
 
 928 So.2d 1089, 1116 (Fla.2005) (holding that counsel’s strategic decisions did not constitute ineffective assistance of counsel).
 

 While counsel’s performance was not deficient with respect to the investigation of possible childhood abuse or the decision to exclude certain witnesses, we do find that counsel conducted an unreasonably incomplete investigation into Rim-mer’s records, including school, employment, and prison records. As we discuss below, counsel’s deficient performance de
 
 *781
 
 prived Dr. Martha Jacobson, the defense’s mental health expert at-trial, of information that was important to her assessment of Rimmer’s mental health.
 

 Dr. Jacobson testified during the penalty phase that Rimmer suffered from schizo-affeetive disorder. At that time, Jacobson also concluded that Rimmer was not under the influence of an extreme mental or emotional disturbance. When the court sentenced Rimmer, it specifically rejected the statutory mitigating circumstance that Rimmer was under the influence of an extreme mental or emotional disturbance.
 

 However, at the evidentiary hearing, Jacobson testified that although she normally reviews a defendant’s mental health, family, school, and prior criminal history records, penalty phase counsel did not provide her with any of this information. Then, based on her review of additional documentation obtained post-trial of Rimmer’s mental health history, including Rimmer’s school records and prior prison records, Jacobson opined at the evidentiary hearing that Rimmer was under the influence of an extreme mental or emotional disturbance at the time of the murders.
 

 Indeed, when questioned at the evidentiary hearing about this matter, counsel testified that he relied on Jacobson to tell him, what records she needed. Counsel made virtually no effort to search for records or to assist Jacobson in her evaluation of Rimmer’s mental health. Despite counsel’s acknowledgment that he failed to provide Jacobson with relevant records, the circuit court concluded that “penalty phase trial counsel was not ineffective in preparing for and presenting Defendant’s mental health mitigation.” The court also stated that “the additional background information and records would have bolstered Dr. Jacobson’s trial testimony, but not to the extent that the results would likely have been any different.” The trial court found that while “the testimony presented at the- evidentiary hearing was more detailed than that presented at trial,” it “for the most part was cumulative, with the exception of the information about physical abuse.” Although we agree with the court’s ultimate conclusion that counsel’s performance does not undermine confidence in the outcome of Rimmer’s penalty phase, we do conclude that counsel’s failure to obtain Rimmer’s relevant and reasonably accessible records and to provide them to the defense expert does constitute deficient performance.
 

 However, even if we accept as credible the evidence presented at the evidentiary hearing, Rimmer still has not demonstrated that he was prejudiced by counsel’s failure to properly investigate and present this information. In light of the severe aggravation in this case, the possible mitigation presented at the hearing does not undermine our confidence in Rimmer’s sentence of death. On direct appeal, this court upheld the trial court’s finding of five aggravating circumstances, including that the murders were cold, calculated, and premeditated (CCP). We have said that CCP is among the weightiest aggravators in the sentencing scheme.
 
 See McKenzie v. State,
 
 29 So.3d 272, 287 (Fla.2010),
 
 cert. denied,
 
 — U.S. -, 131 S.Ct. 116, 178 L.Ed.2d 71 (2010);
 
 Morton v. State,
 
 995 So.2d 233, 243 (Fla.2008). In addition to CCP, the trial court found that the murders were committed while Rimmer was under a sentence of imprisonment, Rim-mer was previously convicted of a capital felony and a violent felony, the murders were committed during the course of-a robbery and kidnapping, and the murders were committed to avoid arrest. Given these aggravating circumstances, we conclude that Rimmer has not demonstrated the requisite prejudice that is necessary to prove that counsel was ineffective under
 
 *782
 

 Strickland.
 
 Because Rimmer has not satisfied his burden under
 
 Strickland,
 
 he is not entitled to relief.
 

 Prosecutor’s Statements
 

 Rimmer also argues that penalty-phase counsel was ineffective for failing to object to certain remarks by the prosecutor during closing argument. Specifically, he contends that the prosecutor made an improper comment about victim Knight’s fear:
 

 Aaron Knight, duct-taped, hands behind his back, laying down on the floor, depicted here in State’s 4 in evidence, as depicted in State’s 6 and 7, State’s 6 and 7, [sic] the 10- to 20-minute period in which Aaron was down on the floor, face down, the terror and the thoughts that went through his mind, that then a car starts to drive and stops; and the defendant gets out of the Ford Probe and then walks back to Aaron Knight, duct-taped, on the floor and says, “You know me, don’t you?” And then Aaron Knight is shot in the back of the head. Heinous, atrocious, and cruel, I submit to you yes, the mental terror and anguish that Aaron Knight went through that has been proven in this case.
 

 In its order, the circuit court concluded that this issue was procedurally barred because it was not raised on direct appeal. Moreover, the court concluded that the comment was relevant.
 

 While we conclude that counsel’s failure to object to the prosecutor’s comment is properly raised as an ineffective assistance of counsel claim, we nonetheless conclude that this claim is without merit. The comment was relevant to a finding that the murders were heinous, atrocious or cruel (HAC) and was a fair comment on the evidence presented at trial. Unlike other cases where this Court has concluded that statements about the victim were improper, this argument by the prosecutor did not invite the jury to imagine Knight’s anguish or put themselves in his place.
 
 Cf. Garron v. State,
 
 528 So.2d 353, 358-59 (Fla.1988) (“[Y]ou can just imagine the pain this young girl was going through as she was laying there on the ground dying. ... I would hope ... that the jurors will listen to the screams and to her desires for punishment.”). Additionally, although the comment was made while the prosecutor argued HAC, which was reversed on appeal, the comment was also relevant to prove CCP, which this Court upheld. Moreover, Rimmer has not demonstrated that he was prejudiced by the comment. Given the gravity of the aggravating circumstances found by the trial court, our confidence in the outcome has not been undermined, and Rimmer is not entitled to relief.
 

 Rimmer also contends that counsel was ineffective for failing to object to another of the prosecutor’s comments. While discussing the murder of Aaron Knight, the prosecutor held the murder weapon and “clicked” it during the following excerpt of the closing argument:
 

 The capital felony was a homicide and was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification. Certainly the murder of Aaron Knight has no moral or legal pretense or justification at all. Cold, calculated and premeditated.
 

 Judge, I have already cleared State’s 60 with your bailiffs.
 

 Defendant Rimmer walks up to Aaron Knight, back from his car, and says, ‘You know me, don’t you?” And Aaron Knight says, “No.” And then what does the defendant do?
 

 (“Click” from gun.)
 

 Shoots him in the back of the head. I submit to you that the murder of Aaron
 
 *783
 
 Knight fits all of those aggravating circumstances. And I submit to you all that the proper legal recommendation for Defendant Rimmer for the murder of Aaron Knight is death.
 

 This conduct does not even rise to the level of that in
 
 Smith v. State,
 
 866 So.2d 51 (Fla.2004), where the defense attorney moved for mistrial after the prosecutor slammed the murder weapon down on the table. Defense counsel moved for mistrial, arguing that the sound was “louder than a gunshot.”
 
 Id.
 
 at 68. The defendant argued in this Court “that the prosecutor’s action prejudiced his defense by injecting fear and emotion into the jury’s consideration of the case.”
 
 Id.
 
 In concluding that the trial court properly admonished the prosecutor and denied the motion for mistrial, this Court said, “In respect to claims such as this, we respect the vantage point of the trial court, being present in the courtroom, over our reading of a cold record.”
 
 Id.
 
 at 64 (citing
 
 Justus v. State,
 
 438 So.2d 358, 366 (Fla.1983)). Likewise, we respect the vantage point of the trial court, and we conclude that there was no error. Rimmer is not entitled to relief.
 

 Rimmer also argues that the
 
 Spencer
 
 hearing testimony of Bradley Krause Sr., the father of victim Bradley Krause, “was also improper and should have been objected to or otherwise corrected by trial counsel.” Rimmer points to Krause Sr.’s statement where he expressed his desire to see Rimmer sentenced to death:
 

 Prosecutor: Mr. Krause, you’re Bradley Krause, Jr.’s father?
 

 Krause: Yes.
 

 Prosecutor: Did you have something which you would like to say to His Hon- or, Judge Cohn?
 

 Krause: Yes, I do. The jury found Robert Rimmer guilty of murdering my son on May 2nd. I would like to ask you to follow the recommendation and sentence him to the electric chair. That’s all I have to say.
 

 The Court: Thank you, Mr. Krause.
 

 Rimmer claims that the father’s statement was improper and that counsel was ineffective for failing to object to this testimony.
 

 Although section 921.141(7), Florida Statutes (1997), prohibits victim impact testimony that suggests an appropriate sentence, we note that .this testimony occurred during the Spencer
 
 [10]
 
 hearing and outside of the jury’s presence. Therefore, there is no risk that the jury’s advisory sentence was improperly affected by sympathy for the victim’s father.
 
 See Card v. State,
 
 803 So.2d 613, 628 (Fla.2001) (“Although [the witness’s] testimony exceeded the proper .bounds of victim impact evidence because she commented on the defendant and the crime and provided her opinion as to a proper punishment, defense counsel failed to contemporaneously object to her testimony. Thus, this issue was not preserved for review and would not demonstrate fundamental error because the testimony came during the
 
 Spencer
 
 hearing and outside the presence of the jury.”). Rimmer is not entitled to relief.
 
 [11]
 

 
 *784
 

 Aggravating Circumstances
 

 With only a cursory argument to support his claim, Rimmer also asserts that counsel was ineffective for failing to object to the jury being instructed on both the pecuniary gain and the witness elimination aggravating circumstances.
 
 [12]
 
 Rimmer’s argument is without merit.
 

 At trial, the court instructed the jury to consider a series of aggravating circumstances, including whether the murders were committed to prevent lawful arrest or to prevent escape, and whether the murders were committed for financial gain. The trial court also gave the doubling instruction to the jury and stated that “if two or more of the aggravating circumstances are proven beyond a reasonable doubt by a single aspect of the offense, you’re to consider that as supporting only one aggravating circumstance.” At sentencing, the trial court stated that it “did not consider the pecuniary gain aggravator” because the circumstance was not proven beyond a reasonable doubt. Although Rimmer contends that “it is legally inconsistent for a jury to consider both aggravators,” and that the jury was erroneously allowed to consider both of these circumstances, his argument is without merit.
 

 First, the trial court’s determination that the pecuniary gain aggravating circumstance was not proven does not mean that the jury should have been pre-eluded from considering it. We have said that “[i]f evidence of an aggravating factor has been presented to a jury, an instruction on the factor is required.”
 
 Henry v. State,
 
 649 So.2d 1366, 1369 (Fla.1994) (citing
 
 Bowden v. State,
 
 588 So.2d 225, 231 (Fla.1991)). The trial court’s ultimate decision not to consider pecuniary gain “does not mean there was insufficient evidence to allow the jury to consider the factor.”
 
 Id.
 
 We have observed that
 

 [i]f the advisory function [of the jury] were to be limited initially because the jury could only consider those mitigating and aggravating circumstances which the trial judge decided to be appropriate in a particular case, the statutory scheme would be distorted. The jury’s advice would be preconditioned by the judge’s view of what they were allowed to know.
 

 Stewart v. State,
 
 558 So.2d 416, 421 (Fla.1990) (emphasis omitted) (quoting
 
 Floyd v. State,
 
 497 So.2d 1211, 1215 (Fla.1986)).
 

 Moreover, although Rimmer argues that “[i]t is impossible for the state to prove beyond a reasonable doubt that the sole or dominant motive for the killing was pecuniary gain, and at the same time prove beyond a reasonable doubt that the sole or dominant motive for the killing was elimination of a witness,” we note that we have previously held that these particular circumstances can, based on the facts of the case, be properly considered at the same
 
 *785
 
 time.
 
 See Sireci v. Moore,
 
 825 So.2d 882, 885-86 (Fla.2002) (holding that claim that CCP, avoid arrest, and pecuniary gain were unconstitutionally duplicated was without merit, and that appellate counsel was not ineffective). Because the evidence introduced at trial justified giving jury instructions on both aggravating circumstances, and because the trial court issued the doubling instruction, the jury was properly allowed to consider both aggravating circumstances. Counsel’s performance was-not deficient, and therefore, Rim-mer has not demonstrated that counsel was ineffective.
 

 Brady
 
 Claim
 

 Rimmer also contends that the State violated
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by withholding various reports prepared by law enforcement agencies. He argues that the State’s conduct prejudiced him because it hindered his misidentification defense by lessening his ability to attack the competence of the law enforcement investigation and the credibility of the eyewitnesses. The circuit court found that the evidence “does not establish that any of the reports, not provided to the defense, contained favorable evidence, or did not contain information that the defense already had.” We agree with the court’s conclusion. In order to demonstrate a
 
 Brady
 
 violation, Rimmer must show that (1) favorable evidence — either exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) that because the evidence was material, the defendant was prejudiced.
 
 Strickler v. Greene,
 
 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999);
 
 see also Way v. State,
 
 760 So.2d 903, 910 (Fla.2000). To meet the materiality prong, Rimmer must demonstrate a reasonable probability that had the suppressed evidence been disclosed the jury would have, reached a different verdict.
 
 See Strickler,
 
 527 U.S. at 289, 119 S.Ct. 1936. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 
 See Way,
 
 760 So.2d at 913;
 
 see also Strickler,
 
 527 U.S. at 290, 119 S.Ct. 1936. The remedy of retrial for the State’s suppression of evidence favorable to the defense is available when “the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine, confidence in the verdict.”
 
 Strickler,
 
 527 U.S. at 290, 119 S.Ct. 1936 (quoting
 
 Kyles v. Whitley,
 
 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). This Court’s review of factual findings relating to
 
 Brady
 
 claims is based on whether the trial court’s findings are supported by competent, substantial evidence. Therefore, this gives deference to the court’s findings on questions of fact but reviews de novo the application of the law and independently reviews the cumulative effect of the suppressed evidence.
 
 See Mordenti v. State,
 
 894 So.2d 161, 169 (Fla.2004);
 
 Way,
 
 760 So.2d at 913.
 

 Rimmer has not shown that the State committed a
 
 Brady
 
 violation. Based on the testimony at the evidentiary hearing, the trial court made the following findings:
 

 Mr. Garfield testified that he did not have some of the documents included in Defense Exhibit 43. According to Mr. Garfield, some of the documents relate only to the codefendant and/or would not have provided him with any useful information that he did not already have. According to Mr. Garfield, some of the information in the FDLE documents, was provided to the FDLE by the WMPD, and not the other way around. Peter Magrino, the trial prosecutor also testified that the FDLE reports were a synopsis of the Wilton Manors reports and that all the FDLE did was assist in compiling a photo lineup.
 

 
 *786
 
 The Court heard testimony at the hearing concerning a West Pam [sic] Beach Police Department report of an investigation they conducted of a “chop shop” and a suspect Greg Langman. It was learned that Langman went to a vocational school attended by the Defendant and that the gun used in the crimes was connected to the “chop shop.” Mr. Garfield testified that he was aware of this information because it was contained in a report from WMPD. Mr. Garfield also stated that the West Palm Beach information is not' something he would have used because it would have associated his client with other crimes and the last thing he wanted to do was establish that his client had the murder weapon prior to the day he was arrested and to associate him with “a gang of thieves in West Palm Beach.”
 

 . There was also testimony, at the evi-dentiary, hearing, about a Plantation Police Department investigation of a murder at a muffler shop. Mr. Garfield testified that he does not believe he could have used this information because the crimes are not similar enough to each other, to get into evidence, and that jury’s [sic] expect you to prove it was the other person. Concerning the reports that two Wilton Manors Police Officers observed Ford Probes, the same kind of car used in the crimes, Mr. Garfield stated that this information would not have been any use to him because there was nothing to follow-up on.
 

 As discussed in the court’s order, Rimmer has not proven each of the elements required of a successful
 
 Brady
 
 claim. In particular, Rimmer has not shown how the evidence would have been exculpatory or impeaching. Therefore, he is not entitled to relief.
 

 RIMMER’S HABEAS CLAIMS
 

 Ineffective Assistance of Appellate Counsel
 

 We now turn to Rimmer’s claims of ineffective assistance of appellate counsel, which he brings before this Court in a petition for writ of habeas corpus. Specifically, Rimmer contends that appellate counsel was ineffective for failing to challenge the following: the testimony of a witness for the State; the trial court’s denial, of the motion to sever defendants; a comment made by the prosecutor; the trial court’s denial of motions for mistrial; the presence of the conjunction “and/or” in the jury instructions; and the consideration of certain aggravating factors. We address each claim in turn and conclude that none of them merits relief.
 

 Appellate counsel’s ineffectiveness is properly raised in a petition for writ of habeas corpus.
 
 See Freeman v. State,
 
 761 So.2d 1055, 1069 (Fla.2000). In order to grant habeas relief on the basis of ineffectiveness of appellate counsel, this Court must determine
 

 whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
 

 Pope v. Wainwright,
 
 496 So.2d 798, 800 (Fla.1986). “The defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based.”
 
 Freeman,
 
 761 So.2d at 1069.
 

 
 *787
 

 Witness Testimony
 

 Rimmer’s first argument is that he was prejudiced by the admission of the testimony of Dynette Potter Mallard, a witness for the State. Mallard, a former girlfriend of codefendant Parker, owned the Kia Sephia that was used in the robbery. Although the State obtained a sworn statement from Mallard on December 22, 1998, this statement was not disclosed to the defense until January 15, 1999, the Friday before jury selection. As a result, the trial court conducted a
 
 Richardson
 

 [13]
 

 hearing, where it concluded that the State committed a substantial and prejudicial, but not willful, discovery violation. The court determined that the proper remedy would be to allow the defense to depose Mallard before she was placed on the stand at trial.
 

 At trial, Mallard testified that she had seen Rimmer and Parker together before and that she knew Rimmer casually. She acknowledged that she may have seen Rimmer at her apartment talking with Parker as recently as the end of April or beginning of May 1998. She stated that Parker drove her Kia Sephia on occasion and on the day of the robbery. She also stated that Parker told her that he was going to the auto shop that day to get repair work done on her car speakers. Parker also recounted to Mallard seeing a woman and her little girl in the shop’s waiting room. After that, he walked to the back of the store, saw some people in the back of the shop, and left. Mallard also testified that Detective Lewis contacted her while looking for Parker some time after the robbery. Rimmer suggests that the trial court should have prohibited Mallard’s testimony at trial, and that appellate counsel was ineffective for failing to raise this argument on direct appeal. Rimmer argues that Mallard’s testimony was prejudicial because it strengthened the connection between him and Parker.
 

 We reject Rimmer’s argument that appellate counsel was ineffective for failing to challenge Mallard’s testimony given the State’s discovery violation.
 
 “Richardson
 
 mandates that once a discovery violation is revealed, the trial court must conduct an inquiry to determine the sanctions that should be imposed on the violating party.”
 
 Snelgrove v. State,
 
 921 So.2d 560, 567 (Fla.2005). Although the exclusion of a witness is a potential remedy, the exclusion of evidence is to be imposed only when no other adequate remedy exists.
 
 See McDuffie v. State,
 
 970 So.2d. 312, 321 (Fla.2007) ,(“We are mindful that Florida Rule of Criminal Procedure 3.220(n)(1) authorizes a trial court to exclude evidence as a sanction for a violation of the discovery rules, but this sanction should only be imposed when there is no other adequate remedy.”). Moreover, a trial court’s decision on a
 
 Richardson
 
 hearing is subject to reversal only upon a showing of abuse of discretion.
 
 Conde v. State,
 
 860 So.2d 930, 958 (Fla.2003) (citing
 
 State v. Tascarella,
 
 580 So.2d 154, 157 (Fla.1991)).
 

 In this case, the trial court conducted the appropriate analysis to determine whether a
 
 Richardson
 
 violation occurred. Having concluded that the late disclosure of Mallard’s statement was not willful, the court ruled that Mallard be made available for deposition by the defense. When Mallard took the stand, her personal observations were appropriate for examination. Moreover, she was subject to cross-examination by the defense. The court did not abuse its discretion when it declined to exclude Mallard as a witness. Therefore, appellate counsel cannot be deemed inef
 
 *788
 
 fective for failing to raise a meritless claim.
 

 Severance
 

 Rimmer also claims that appellate counsel was ineffective for failing to challenge the trial court’s denial of Rimmer’s motion to sever. Before trial, Rimmer moved to sever his trial from that of codefendant Parker. Rimmer pointed to Parker’s statement to Detective Lewis that he last saw Rimmer in December 1997. Rimmer argued that because identity would be a key issue during the trial, introducing Parker’s statement that the two knew each other would be prejudicial. Rimmer’s motion was initially denied by the trial court, although it reexamined the admissibility of the statement at trial and ruled that Lewis could not be examined on the matter.
 

 The error that Rimmer sought to prevent was the violation of a defendant’s right to confrontation under
 
 Bruton v. United States,
 
 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In
 
 Bruton,
 
 the United States Supreme Court held that at a joint trial where a codefendant does not testify, a defendant’s Sixth Amendment right to confrontation is violated when a statement by the codefendant that inculpates the defendant is admitted into evidence.
 
 Id.
 
 at 136-37, 88 S.Ct. 1620. The court did not err in denying Rimmer’s motion, and Rimmer is not entitled to relief.
 

 “Under Florida Rule of Criminal Procedure 3.152(b)(1)(A), a severance of defendants may be ordered when it is appropriate to promote a fair determination of the guilt or innocence of the defendants.”
 
 Farina v. State,
 
 801 So.2d 44, 52 (Fla.2001). However, “severance is not necessary when the evidence is ‘presented in such a manner that the jury can distinguish the evidence relating to each defendant’s acts, conduct and statements, and can then apply the law intelligently and without confusion to determine the individual defendant’s guilt or innocence.’”
 
 Id.
 
 (quoting
 
 Coleman v. State,
 
 610 So.2d 1283, 1285 (Fla.1992)).
 

 The trial court’s decision on a motion to sever is subject to review for an abuse of discretion.
 
 See Farina,
 
 801 So.2d at 52. Given that the trial court ultimately ruled that Parker’s statement was inadmissible, no
 
 Bruton
 
 violation can be gleaned from the trial court’s denial of the motion to sever. Therefore, appellate counsel cannot be deemed ineffective for failing to raise this issue.
 

 Moreover, we reject Rimmer’s argument that a
 
 Bruton
 
 violation occurred in light of Mallard’s testimony. Our review of the record shows that Mallard did not testify to any statements made by Parker that inculpated Rimmer. Her testimony that she saw Rimmer and Parker together was the result of her own personal observations, which were certainly admissible. Even if this testimony had resulted in a
 
 Bruton
 
 error, any error was harmless in light of the significant evidence linking Rimmer to the crime scene. This significant evidence includes two victim/eyewitness identifications of Rimmer as the shooter and Rimmer’s discarding of the murder weapon and other crime scene evidence. Appellate counsel cannot be deemed ineffective for failing to raise mer-itless claims.
 

 Prosecutor’s Comment
 

 Rimmer also alleges appellate counsel’s ineffectiveness for failing to challenge one of the prosecutor’s comments. At the end of Detective Lewis’s testimony, the prosecutor said: “Given Court’s ruling [as to the admissibility of Parker’s statement], I have no further questions of Detective Lewis at this time.” At trial, counsel moved to strike the prosecutor’s statement, and the
 
 *789
 
 motion was -granted. Rimmer contends that although appellate counsel challenged this statement as an improper prosecutorial comment, appellate counsel failed to raise this issue on direct appeal in the correct context. Rimmer argues that the comment should have been challenged in light of the State’s discovery violation and the motion to sever, and that the failure to do so constituted ineffective assistance of appellate counsel. On direct appeal, we concluded that the claim regarding this “isolated remark” was without merit.
 
 Rimmer,
 
 825 So.2d at 324. This Court said: “Following - the comment, defense counsel objected, which the trial court sustained, instructing the jury to disregard the comment. Later in the trial, the court admonished counsel not to make any extraneous comments concerning the court’s evidentiary rulings. Thus, this claim is without merit.”
 
 Id.
 
 The- additional perspective of Mallard’s testimony and the motion to sever do not affect our conclusion that this comment, when viewed individually or cumulatively, does not entitle Rimmer to relief.
 

 Motions for Mistrial
 

 Rimmer argues that appellate counsel was ineffective for failing to challenge the trial court’s denial of a motion for mistrial made during the testimony of Michael Dixon. Dixon and victirh Knight were partners in ownership of the Audio Logic store. Dixon provided lengthy testimony about the store, the stolen equipment, and a prior encounter with Rimmer, but the testimony at issue is a statement where Dixon indicated that there was a motion to suppress in the case:
 

 Defense attorney: Not that I’m questioning your identification, but when you went to that line-up on July 13th, 1998, you, in your mind, you knew Robert would be in that line-up?
 

 Dixon: We have been through this several times before, you and me. But I guess for the Court—
 

 Defense attorney: This is the first time it’s you and me and the jury, correct?
 

 Dixon: Right.
 

 Defense attorney: Just since you brought that up, I took one deposition of you?
 

 Dixon: Yes.
 

 Defense attorney: That would have been on September 18th, 1998?
 

 Dixon: I’ll take that as correct.
 

 Defense attorney: That was myself, Mr. Miller, and Mr. Magrino?
 

 Dixon: Yes.
 

 Defense attorney: I met you one time at a deposition?
 

 Dixon: Yes.
 

 Defense attorney: And I was present when you were at the live line-up?
 

 Dixon: Yes.
 

 Defense attorney: I didn’t ask you any questions?
 

 Dixon: No, sir.
 

 Defense attorney: And we had a hearing which you testified for a short period of time, correct?
 

 Dixon: Yes, the motion to suppress.
 

 Defense attorney: Judge, may we approach?
 

 The Court: Yes, sir.
 

 During the sidebar that followed, defense counsel Garfield moved for mistrial on the grounds that Dixon’s answer was unresponsive and that it suggested to the jury that Rimmer had something to hide. The trial court denied the; motion for mistrial and gave the following curative instruction to the jury:
 

 The Court: Folks the last answer given. by the witness was unresponsive. The Court has therefore stricken the answer.
 
 *790
 
 You’re instructed to disregard the answer. ■
 

 Rimmer contends that appellate counsel’s failure to raise this issue constitutes ineffective assistance of appellate counsel. We review the trial court’s denial of the motion for mistrial for an abuse of discretion.
 
 See Tumblin v. State,
 
 29 So.3d 1093, 1103 (Fla.2010).
 

 Rimmer relies on this Court’s decision in
 
 Walsh v. State,
 
 418 So.2d 1000 (Fla.1982), where this Court concluded that a motion for mistrial was properly granted after the jury became aware that the defendant took a polygraph test. Although the trial court initially gave a curative instruction, it granted a mistrial the following day.
 
 Id.
 
 In concluding that the trial court properly granted a mistrial, this Court said, “We agree with the trial judge that this type of testimony would be difficult for the jurors to disregard and that the evidence would likely influence the jury’s decision. We agree that there was a sufficient manifest necessity to grant a mistrial....”
 
 Id.
 
 at 1003.
 

 However, in Rimmer’s case, Dixon’s innocuous mention of the motion to suppress hearing does not warrant a mistrial. The jury was not made aware of the context or the result of the motion to suppress. Moreover, the trial court appropriately gave the jury a curative instruction. Because counsel cannot be deemed ineffective for raising meritless issues, Rimmer is not entitled to relief on this claim.
 

 Rimmer also contends that appellate counsel was ineffective for failing to challenge the trial court’s denial of a motion for mistrial following the admission of a particular statement by a police officer during the car chase on May 10, 1998. Following the police chase, which led to Rimmer’s home, he was arrested. The State sought to introduce the recorded transmissions between the officers during the chase. Trial counsel initially objected on the basis of hearsay, but the trial court conditionally admitted the tape providing that the State proved that the recording was made during the course of a police chase.
 

 On the tape, an unidentified voice says,
 
 “We
 
 can’t let him barricade himself in the house.” The State’s brief notes that although the transcription of the tape does not contain this phrase, after the tape was published to the jury and introduced into evidence without objection, trial counsel represented to the court that the tape said, ‘We can’t let him barricade himself in the house.” Counsel moved for mistrial on the grounds that the tape “implie[d] that [Rim-mer] is particularly dangerous.” The trial court denied the motion for mistrial. Rim-mer argues that this statement was so prejudicial that it entitled him to a mistrial. Although Rimmer offers arguments about the presumption of innocence and likens the recorded statement to the jury seeing a defendant in shackles, we conclude that Rimmer’s motion for mistrial was properly denied. Based on the facts of this case, and given the nexus between Rimmer’s flight and the crimes with which he was charged, the statement is probative of Rimmer’s consciousness of guilt. Moreover, as the State notes, this isolated statement was not made a feature of the trial. Consequently, Rimmer is not entitled to relief on this claim.
 

 Jury Instructions
 

 Rimmer argues that the use of the “and/or” conjunction bétwéen his name and codefendant Parker’s name in the jury instructions constituted fundamental error in his case and warrants a new trial. Because appellate counsel failed to raise this issue, Rimmer contends that counsel was ineffective. Our review of the record in
 
 *791
 
 this ease leads us to conclude that Rimmer is not entitled to relief.
 

 In
 
 Garzon v. State,
 
 980 So.2d 1038, 1045 (Fla.2008), we condemned the use of “and/ or” and concluded that its use in jury instructions was improper. However, relying heavily on the facts and the strength of the link between the appellant and the crimes, we also concluded that the use of “and/or” did not constitute fundamental error.
 
 Id.
 

 In Rimmer’s case, although none of the fingerprints found at the crime scene matched Rimmer’s prints, the following evidence links him to the crimes for which he was convicted: (1) Rimmer had a prior connection with Audio Logic; (2) a car matching the description of the Ford Probe registered to Rimmer was seen at Audio Logic during the robbery; (3) eyewitness Burke saw Rimmer before and during the robbery; (4) Rimmer was identified by both Burke and Moore as the shooter; (5) a sketch based on Burke’s description of Rimmer was used to locate him; (6) Rimmer rented a storage unit days after the murder and stored stolen stereo equipment in it; (7) Rimmer’s fingerprints were found on the stolen equipment; (8) Rimmer was pursued in a high-speed chase just over a week after the murders; (9) during the chase, Rimmer threw three items — the murder weapon, the gun taken from Audio Logic, and Moore’s wallet — out of the window and was seen doing so.
 

 We also find it instructive that as in
 
 Garzon,
 
 the jury in Rimmer’s case was given both a principals instruction and a multiple defendants instruction. The jury was advised that a verdict of guilty or not guilty as to either Rimmer or Parker should not affect' its verdict as to the code-fendant and was instructed by the trial court as follows: “[A] separate crime is charged against each defendant and each count of the indictment. The defendants have been tried together. However, the charges against each defendant and the evidence applicable to him must be considered separately.” As we noted in
 
 Garzon,
 
 these instructions “reinforced that the jury was to consider each defendant individually.” Ga
 
 rzon,
 
 980 So.2d at 1044.
 

 Moreover, like the jury in
 
 Garzon,
 
 the jury in Rimmer’s case was given a separate verdict form for each defendant and for each crime. We observed in
 
 Garzon
 
 that “the jury therefore had before it individualized jury forms that further reinforced the individualized consideration each defendant was to receive,” and concluded that “[w] or king in tandem, the instructions and verdict forms strongly emphasized to the jury that each defendant was to receive an individualized consideration.”
 
 Id.
 

 Although Rimmer argues that his case is distinguishable from
 
 Garzón,
 
 we reject this argument. In light of the strong evidence that linked Rimmer to the crimes, the use of the principals and multiple defendants instructions, and the use of separate verdict forms, we conclude that Rim-mer has not demonstrated that the use of the “and/or” conjunction in the jury instructions constituted fundamental error.
 
 See also Hunter v. State,
 
 8 So.3d 1052 (Fla.2008) (holding that under the totality of the circumstances, the use of the “and/ or” conjunction, while erroneous, did not constitute fundamental error). As a result, counsel cannot be deemed ineffective, and Rimmer is not entitled to relief.
 

 Aggravating Circumstances
 

 Rimmer also asserts that appellate counsel was ineffective for failing to argue that the jury was improperly instructed on both the pecuniary gain and the witness elimination aggravating circumstances. Rim-mer’s argument is without merit. Because we have, already concluded that penalty
 
 *792
 
 phase counsel was not deficient for failing to object to the jury instructions, we now conclude that appellate counsel was not ineffective for failing to raise this issue on direct appeal.
 
 See Sireci v. Moore,
 
 825 So.2d 882, 886 (Fla.2002).
 
 [14]
 
 Rimmer i1s not entitled to relief.
 

 CONCLUSION
 

 For the reasons stated above, we affirm the trial court’s denial of postconviction relief, and we also deny Rimmer’s petition for writ of habeas corpus.
 

 It is so ordered.
 

 CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.
 

 [1]
 

 . As noted on direct appeal, there are various name references to Kimberly Davis Burke. Although on direct appeal she was referred to as "Davis,” for the purposes of this opinion she will be referred to as "Burke."
 

 [2]
 

 . Burke testified that there was a third person, a male, who was also helping move boxes of stereo equipment. This person was never identified.
 

 [3]
 

 . One of the aggravating circumstances, that Rimmer was convicted of a felony and was under a sentence of imprisonment, was based on the fact that at the time of the murders Rimmer was on conditional release following an attempted armed robbery conviction.
 

 [4]
 

 . The Court sentenced Rimmer to life imprisonment for the robbery and kidnapping counts, thirty years’ imprisonment for the attempted armed robbery, and ten years' imprisonment for the aggravated assault. Code-fendant Parker is serving life sentences for the murders and for the counts of robbery and kidnapping. He was also sentenced to fifteen years in prison for attempted armed robbery, and five years for aggravated assault. Parker's convictions and sentences were affirmed on direct appeal.
 
 See Parker v. State,
 
 795 So.2d 1096 (Fla. 4th DCA 2001).
 

 [5]
 

 . Rimmer raised the following issues on direct appeal:
 

 (1) the trial court erred in denying a motion to suppress physical evidence where the items seized were not part of the search warrant for defendant’s vehicle; (2) the trial court erred in admitting the pretrial and trial identifications of appellant by two witnesses where the procedures employed by the police were unnecessarily suggestive; (3) the trial court erred in excusing two prospective jurors; (4) the trial court erred in allowing Detective Kelley to testify about his ability to see without prescription eyeglasses as rebuttal testimony to evidence that appellant could not function without his glasses; (5) the trial court erred in failing to declare a mistrial when the prosecutor asked the appellant’s wife whether she had ever asked her husband about the murders, thereby encroaching upon appellant’s right to remain silent; (6) prosecutorial comments during the guilt phase proceedings denied appellant of a fair trial; (7) the trial court erred in allowing the prosecutor to cross-examine the defense’s mental health expert about appellant’s criminal history where the expert did not rely on the evidence in her evaluation or opinion; (8) improper prosecutorial comments during the penalty phase proceedings denied appellant a fair trial; (9) the evidence is insufficient to support the heinous, atrocious, and cruel (HAC) aggravator; and (10) the trial court erred in permitting the jury to consider victim impact evidence.
 

 Rimmer, 825
 
 So.2d at 311 n. 9.
 

 [6]
 

 .As restated, Rimmer raised the following claims in his original and his amended post-conviction motions: (1) Rimmer was deprived of due process and equal protection because he has been denied access to files and records that are in the custody of certain state agencies; (2) the application of new rule
 
 *773
 
 3.851 deprives Rimmer of due process and equal protection: (3) Rimmer’s inability to interview jurors to determine whether juror misconduct occurred violates his constitutional rights; (4) Rimmer’s convictions are unreliable because trial counsel failed to adequately investigate and prepare a defense and to adequately challenge the State's case; (5) Rimmer’s sentencing phase was unreliable because trial counsel failed to adequately investigate and prepare mitigating evidence and to adequately challenge the State’s case; (6) Rimmer’s right to effective counsel was violated because of trial counsel’s conflict of interest; (7) trial counsel was ineffective for failing to object to improper prosecutorial argument; (8) Rimmer was deprived of his rights under
 
 Ake v. Oklahoma,
 
 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); (9) the State withheld material and exculpatory evidence and violated Rimmer’s constitutional rights; (10) Rimmer is insane to be executed; (11) Rimmer's death sentence is unconstitutional because it improperly shifts the burden to the defense and because the trial court employed a presumption of death in sentencing him, and trial counsel was ineffective for failing to make this argument; (12) Rimmer is innocent of first-degree murder, and there was insufficient evidence to convict him; (13)
 
 Ring (Ring v. Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)) claim; (14) Florida’s methods of execution constitute cruel and unusual punishment; and (15) hearsay admitted at trial deprived Rimmer of a full and fair trial, and counsel was ineffective for failing to object to such hearsay.
 

 [7]
 

 .
 
 Huff v. State,
 
 622 So.2d 982 (Fla.1993).
 

 [8]
 

 .
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
 

 [9]
 

 . Moreover, we reject Rimmer’s argument that the State committed an act of prosecuto-rial misconduct by placing Officer Kelley on the stand during rebuttal.
 

 [10]
 

 .
 
 Spencer v. State,
 
 615 So.2d 688 (Fla.1993).
 

 [11]
 

 . On direct appeal, Rimmer challenged several comments that were made by the prosecutor during the penalty phase. In denying relief for these allegedly improper comments, this Court noted that the defense counsel did not object to them. Rimmer now argues that counsel was ineffective for failing to object to the comments-. The argument in Rimmer’s brief is contained in a footnote, and the summary of these comments is taken directly from our opinion on direct appeal:
 

 These comments include: (1) describing the shootings as "vicious and brutal executions”; (2) describing the mental health expert’s opinion as "legal mumbo-jumbo”; (3) asserting that the prison system is filled
 
 *784
 
 with individuals like appellant who suffer from antisocial personality disorders; (4) telling the jury to do its job and return the "morally” correct death sentence; (5) reciting the victim-impact evidence, followed by a statement advising the jury that while Florida no longer paroles inmates, it does release prisoners through a conditional release program; and (6) during the
 
 Spencer
 
 hearing, describing the appellant as a "worthless piece of fecal matter ... whose death should come prior to natural causes.”
 

 Rimmer,
 
 825 So.2d at 325. Rimmer is correct that we noted counsel's failure to object. However, we also proceeded to conclude that “none of the alleged improper comments rise to the level of fundamental error, individually or collectively.”
 
 Id.
 
 Therefore, Rimmer’s claim fails, and he is entitled to no relief.
 

 [12]
 

 . Rimmer also raises this claim in his habe-as petition as a claim of ineffective assistance of appellate counsel.
 

 [13]
 

 .
 
 Richardson v. State,
 
 246 So.2d 771 (Fla.1971).
 

 [14]
 

 . We also reject Rimmer's arguments that appellate counsel was ineffective for failing to argue that the pecuniary gain aggravating circumstance did not apply to Rimmer as a matter of law, or for failing to argue that the statute underlying the pecuniary gain aggravating circumstance was facially vague and overbroad.